## KEYSTONE GRAIN COMPANY, a Corporation, v. J. S. JOHNSON.

### (165 N. W. 977.)

New trial — motion for — newly discovered evidence — ground of — trial court — discretion — interference with — when.

1. A motion for a new trial based on the ground of newly discovered evidence is addressed to the sound, judicial discretion of the trial court. The appellate court will not interfere unless a clear abuse of such discretion is shown.

**Discretion of trial court — abuse of — not shown.**

2. In the instant case it is held that an abuse of discretion has not been shown.

Opinion filed December 12, 1917.

Appeal from the District Court of Burleigh County, Honorable W. L. Nuessle, Judge.

Defendant appeals.

Affirmed.

*Miller, Zuger & Tillotson,* for appellant.

As the basis for a motion for a new trial on the ground of newly discovered evidence, it must appear that such evidence is material, not merely impeaching nor cumulative, and that by the exercise of due diligence it could not have been discovered before the former trial, and that it has been discovered since the trial. 4 Enc. Pl. & Pr. 791.

*Fisk, Murphy, & Linde,* for respondent.

It is necessary to specify all objections to the order of the court relied upon, and such as are not so pointed out are abandoned. Shuman v. Lesmeister, 34 N. D. 209, 158 N. W. 271.

It is settled that when a new trial is granted the order of the lower court will be affirmed if any ground for sustaining it is found in the record. Gooler v. Eidsness, 18 N. D. 338, 121 N. W. 83; Shuman v. Lesmeister, supra; Davis v. Jacobson, 13 N. D. 430, 101 N. W. 314.

Appellant's specification of error is not broad enough to raise any question as to the sufficiency of the other grounds urged for a new trial in the lower court. Aylmer v. Adams, 30 N. D. 527, 153 N. W. 419.

"Newly discovered evidence to successfully contradict a witness upon a material matter may be cause for allowing a new trial, and it is no objection to such allowance that the evidence may incidentally impeach a witness." 29 Cyc. 920, 921; 1 Hayne, New Tr. & App. Revised ed. §§ 90 and 91; Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419; Malmstad v. McHenry Teleph. Co. 29 N. D. 21, 149 N. W. 690; Wagoner v. Bodal, 37 N. D. 594, 164 N. W. 147, and cases cited.

The parol evidence rule is not a rule of evidence, but a rule of substantive law governing the formation of contracts when applied to

written contracts. Musser v. Stauffer, 192 Pa. 398, 43 Atl. 1018; Greenl. Ev. 16th ed. 1, ¶ 305a.

CHRISTIANSON, J. This is an appeal from an order granting plaintiff's motion for a new trial on the ground of newly discovered evidence. The plaintiff is a grain brokerage concern; the defendant is engaged in the real estate business and in farming. On September 6, 1916, the defendant instructed the plaintiff by telegraph to "sell 7,000 flax to arrive. Two dollars or better." The plaintiff immediately complied with the request, and sold for the defendant 7,000 bushels of flax to arrive at $2.02¾ per bushel. The defendant delivered only two carloads of flax, and plaintiffs were required to buy the remainder to fill the contract at $2.68 per bushel. The plaintiff brings this action to recover $1,549.38, the amount it was required to pay in order to fill the contract. It is undisputed that, according to the usages and rules of the Chamber of Commerce, the defendant had twenty days in which to deliver the flax. There is no dispute as to the amount of flax which defendant actually delivered, or the sum which plaintiff was required to pay for the balance required to fill the contract. The only question in dispute between the parties arises with respect to the time when plaintiff was required to close the transaction. Plaintiff claims that, according to the usages and rules of the Chamber of Commerce, it was understood and agreed between the parties that, if the flax was not delivered within twenty days, then the time for delivery should be automatically extended unless the purchaser demanded the flax. Defendant, on the other hand, contends that the delivery was not to be extended beyond the twenty-day period. He further contends that at the expiration of such period he specifically instructed the plaintiff to close the deal and buy at the then prevailing price the necessary flax to make up the difference between the amount delivered and the amount sold. These respective contentions presented the only questions in dispute between the parties upon the trial.

The jury returned a verdict for the defendant. Plaintiff thereupon moved for a new trial on the ground, among others, of newly discovered evidence which it could not with reasonable diligence have produced at the trial. This appeal is from the order granting the motion.

The newly discovered evidence which plaintiff proposed to produce upon a retrial of the action is that of one J. H. Noon, a farmer residing in the vicinity of Wilton. Noon makes affidavit to the effect that on or about October 31, 1916, while en route to attend a fair at Mandan, he met the defendant, Johnson, and plaintiff's agent, Larson, in the lobby of the McKenzie Hotel, in Bismarck. And that during a conversation then had Johnson referred to the flax deal, "and stated in substance and effect that flax had been rapidly advancing in price, and that had the market price of flax gone down he would have had the laugh on Larson and his company, but as it is the laugh is on me." That Johnson further stated in this connection: "I am a sport and am going to deliver the flax just the same." Whereupon Larson explained to Johnson "that it made no difference to his people whether the price went up or down, as all there was in it for his company was the commission on the deal. . . . That during such conversation the said Johnson in no manner stated or intimated that he was not obliged, under his sales contract, to deliver such flax, but on the contrary, as above stated, he unconditionally stated in substance and effect that it was his intention to deliver such flax to fill the contract." Noon further states that he never communicated the facts with respect to such conversation to any person, and that if called as a witness he will appear and testify to the facts stated.

Noon's affidavit is corroborated by the affidavit of Larson. Larson further states that he never communicated to his employers or to plaintiff's attorneys, either the fact of such conversation or the name of Noon, for the reason that Noon's name had escaped his recollection, and he feared criticism for inability to remember such name. Affidavits by two other persons to the effect that Noon is a man of honesty and integrity, whose reputation for truth and veracity has not been questioned, were also submitted.

On this appeal defendant contends: (1) That the evidence was not newly discovered, (2) that it was cumulative and impeaching, and (3) that there was no showing of diligence.

It is elementary that a motion for a new trial on the ground of newly discovered evidence is addressed to the sound judicial discretion of the trial court. The fact that newly discovered evidence which has a material bearing upon some important or controlling issue in a

case is also cumulative, and incidentally tends to impeach or deny the correctness of testimony given on behalf of the adverse party, does not necessarily preclude the trial court from granting a new trial on the ground of such newly discovered evidence. Aylmer v. Adams, 30 N. D. 514, 523–528, 153 N. W. 419. The determination of this, as well as every other question relative to a new trial on this ground, is primarily a question for the trial court, and the appellate court is not justified in interfering therewith unless the record discloses a clear abuse of discretion. The rules applicable to new trials on discretionary grounds, and the respective functions of trial and appellate courts on such motions, have been so fully discussed by this court in several recent decisions that little remains to be said in regard thereto. See Aylmer v. Adams, 30 N. D. 514, 153 N. W. 419; McGregor v. Great Northern R. Co. 31 N. D. 471, 154 N. W. 261, Ann. Cas. 1917E, 141; State v. Cray, 31 N. D. 67, 153 N. W. 425; Blackorby v. Ginther, 34 N. D. 248, 158 N. W. 354; First International Bank v. Davidson, 36 N. D. 1, 161 N. W. 281; Reid v. Ehr, 36 N. D. 552, 162 N. W. 903; Wagoner v. Bodal, 37 N. D. 594, 164 N. W. 147. It is contended by defendant's counsel that plaintiff was required to show by affidavits of its managing officers and its attorneys that at the time of the trial such officers and attorneys had no knowledge of Noon's proposed testimony. True, it was incumbent upon the plaintiff to show that the evidence was newly discovered. The affidavits submitted, however, show that only three persons were present and participated in the conversation. One of these was the defendant. The other two make affidavit to the effect that they never mentioned such conversation either to plaintiff's officers or attorneys, or to any person whatsoever. If these statements are true they establish almost to a certainty the fact that plaintiff's managing officers and attorneys had no knowledge of the existence of such evidence at the time of the trial.

It will be observed that the proposed testimony of Noon has a direct bearing upon the only question at issue between the parties. The issue was close, and the evidence sharply conflicting. In our opinion the question whether a new trial should be granted on the ground of newly discovered evidence was one peculiarly within the trial court's discretion. Its determination must control, unless a clear abuse of

discretion is shown. No abuse of discretion appears, and the order must be affirmed. It is so ordered.

ROBINSON, J. (concurring). The plaintiff brings this action to recover $1,549.38 as the balance due on the sale of 7,000 bushels of flax at $2.02¾ per bushel. The jury found a verdict in favor of the defendant. The court granted a new trial and defendant appeals. The motion for a new trial was made on the record and on newly discovered evidence.

In September, 1916, the plaintiffs were grain brokers doing business in the Chamber of Commerce, in Minneapolis. Defendant had a good crop of flax and was about to commence threshing it, and the price of flax looked good to him. He sent the plaintiffs a telegram as follows:

September 6, 1916.

Keystone Grain Company,
  Minneapolis, Minn.
  Sell 7,000 flax to arrive. Two Dollars or better.

The company at once sold for defendant 7,000 bushels of flax at $2.02¾ per bushel. Now it is a rule and custom that when a party sells grain or flax to arrive he has twenty days to deliver and by courtesy the time of delivery may be extended; and, if the seller fails to deliver, the broker must protect himself by purchasing the grain at market price for the buyer. The defendant delivered two carloads of the flax, and, as the price continued to advance, he sold the rest of his flax locally and left the plaintiffs to buy for him enough to fill the contract. They had to pay $2.68 per bushel. The defense is that the plaintiffs should have bought the flax to close the deal at the expiration of twenty days, instead of courteously waiting for defendant to ship the flax. He testifies that, at the time of giving the order to sell the flax, he made such a special arrangement with one Larson, who represented the plaintiffs and solicited the order. Larson testifies to the contrary, and he is strongly corroborated by facts and circumstances. Of course when defendant contracted to sell his flax, he thought $2 a bushel a good price, and day after day as the flax went up a few cents he thought

it was so much nearer the top, and that what goes up must come down, and so when it went to $2.68 he was still anxious for his brokers to hold the deal for him.

As time passed the brokers wrote him letter after letter. On September 25, 26, and on October 3d and 17th they wrote him that the purchaser was anxious to receive the flax and to close the deal. On October 17th they wrote: "Purchaser of this flax has been after us pretty strong the last few days, but we have pursuaded him to hold off a little longer, and not to ask us to buy it in, assuring him that the balance to fill the order would be coming along very soon." It was not until October 23, 1916, that he refused to deliver the flax, and advised the plaintiffs that he had sold his flax locally. Then the brokers promptly purchased at market price to fill the order. By a letter or telegram Johnson might have had his deal closed on any day, but he was disposed to speculate, and to sell his flax locally at the advanced price, and to have his brokers hold the deal till flax went down to the starting point. The facts and circumstances and the direct and positive testimony of Larson do far outweigh the testimony of Johnson in regard to a contract to close out his deal at the end of twenty days. Hence on the record the jury should have found a verdict for the plaintiffs. The great preponderance of the testimony was in their favor, but the motion for a new trial is supported by the affidavit of J. H. Noon. It shows that on October 3d, a week after the lapse of twenty days, at the McKenzie Hotel, in Bismarck, Noon met Johnson, who talked with him concerning the flax deal, and said that the flax had been rapidly advancing in price, and that had the market price gone down he would have had the laugh on Larson and his company, but, as it is, "they have the laugh on us." "I am a sport and I am going to deliver the flax just the same." But Johnson did not need to be a sport in order to observe his contract. That was a matter of common fairness and honesty between man and man. If the flax had gone down, instead of up, Johnson would have availed himself of the contract, and would have made no complaint against his brokers for being over courteous in giving him extra time to deliver his flax. Clearly the court was right in granting a new trial, and the order is affirmed.