JOSEPH ABDALCADER, Appellant, v. RICHARD KANAN, Anna Kanan, Respondents.

(178 N. W. 288.)

**Appeal and error — supreme court on trial de novo may remand case for new trial.**

1. In a trial *de novo* in the supreme court, where an action in equity to foreclose a real estate mortgage is made determinative upon the issue of payment and settlement of the debt, and where the record evidence upon such issue is made indefinite and uncertain by reason of newly discovered evidence offered upon motion for a new trial in the trial court, this court, although the trial court has denied the motion for a new trial, may remand, in the interest of substantial justice, the entire case to the district court for purposes of a new trial.

Opinion filed June 16, 1920.

Action in District Court, Billings County, *Crawford* and *Hanley,* JJ., to foreclose a mortgage.

Plaintiff has appealed from a judgment and order denying a new trial and has demanded a trial *de novo*.

Remanded for a new trial.

*Simpson & Mackoff,* for appellant.

*T. F. Murtha,* for respondents.

If the plaintiff was surprised he should have made an affidavit for continuance. 29 Cyc. 876; Gaines v. White, 1 S. D. 47, 47 N. W. 524.

"A new trial will not be granted except in unusual circumstances on the ground of newly discovered evidence which merely tends to discredit or impeach a witness or which is merely cumulative." 29 Cyc. 918, and note; Axiom Min. Co. v. White, 10 S. D. 198, 72 N. W. 462; McGregor v. R. Co. 31 N. D. 470; State v. Croy, 31 N. D. 67; Jensen v. Clausen, 34 N. D. 637.

A new trial will be granted on the ground of newly discovered evidence only when the latter is of such character as will probably change the result of the former trial. Heyrock v. McKenzie, 8 N. D. 601; Braithwaite v. Aiken, 2 N. D. 57.

BRONSON, J. *Statement.*—This is an action in equity to foreclose a real estate mortgage given to secure a promissory note. In September, 1919, after trial, the district court, upon findings, rendered judgment for the defendants upon the ground that there had been payment and settlement of the note. The plaintiff moved for a new trial upon the grounds of insufficiency of evidence, errors of law, and newly discovered evidence. The trial court denied the motion. The plaintiff has appealed from the judgment and the order denying such motion, and has requested a trial *de novo* in this court. The facts necessary to be stated are substantially as follows:

The plaintiff was a peddler. The defendants are husband and wife. The husband conducted a general store at Fryburg, North Dakota. They understand the English language rather imperfectly. Their correspondence is in Syrian. They sign their names in the Syrian language or Arabic language. In December, 1916, the defendants made a promissory note to the plaintiff for money borrowed, in the sum of $706.69. To secure the same they executed a real estate mortgage upon certain lots in Fryburg, North Dakota. On February 18, 1918, this note was renewed with interest for $765.22. In March, 1919, foreclosure of this mortgage by advertisement was instituted. This foreclosure was enjoined, and pursuant thereto this action in equity has resulted. In their original answer, made May 19, 1919, the defendants averred a general denial. This answer was amended on September 8, 1919, wherein it is alleged that Anna Kanan, the wife, never made a promissory note to the plaintiff; that the defendant, the husband, executed a note, but it is specifically denied that he delivered it; that he left such note with the agent of the plaintiff, with the understanding that it was not to be delivered until it was agreed to by his wife, and that, in some way unknown, the plaintiff got possession thereof. It alleged, further, that about the date of the second note the parties had a full settlement of all their affairs, and such notes were settled and paid in full. The trial was had on September 11, 1919.

The evidence offered on behalf of the defendants is to the effect that on February 25, 1918, a settlement was made between the parties; that then the plaintiff was paid $250 in cash, received $190 worth of merchandise and the balance amounting to some $238, as they figured it was, upon accounts owing by the plaintiff to the defendants. That the plaintiff produced a note, tore it up and burned it in the stove. They introduced in evidence a receipt for $700 in full payment of the note and mortgage. The signature thereto attached is in Syrian language, which the defendants claim to be the signature of the plaintiff. It is witnessed by another signature in the Syrian language stated to be that of Emil Kanan, and also by one Ernest Claflin, an American. They also offer in evidence a statement of the amount between the plaintiff and defendants showing $250 cash paid, $190 merchandise delivered, and other items for house furnished and livery bill paid for team of horses and trunk cases amounting to $72, aggregating a total of $512. The witnesses of the transaction concerning the settlement were the defendants, the daughter of the defendants, Emil Kanan, a relative, and Ernest Claflin. The defendant, the husband, testifies that this receipt was made February 25, 1918. Emil Kanan likewise so testifies. The daughter, fourteen years old, testifies that she wrote the receipt on February 25, 1918. Ernest Claflin, another witness, does not understand the Syrian language; he speaks English only; he testifies that he signed as witness to this receipt on Monday evening, February 25, 1918 (February 25th in 1918 occurred on Monday). He did not see the defendants give to the plaintiff any money, nor did he see any goods delivered, but he heard him say he was going to receive goods in payment, and they talked of settlement, and he saw him get a note, tear it in two, and put it into the stove. The wife testifies that she cannot write or read English, that she did not sign the note. The cashier of the First State Bank at Fryburg produced the signature of Anna Kanan, as made on the card records of the bank. Her name appeared thereon in English, and this cashier testified that she had seen her write and sign her name in English. One Sumara, a nephew of the plaintiff, was formerly in partnership with the defendant, Richard Kanan. On February 16, 1918, by written agreement this partnership was dissolved. By its terms, the defendant Kanan assumed the business and the obligations, with the right to collect the debts owing, except-

ing that the accounts owing by the plaintiff and one Mike Kanan were assigned and turned over to this nephew. He testified that the note and mortgage in question were signed by the defendants. That the plaintiff tore up the first note and put it in the stove. That the defendants signed the second note on February 18, 1918; that the wife can sign her name in both her own and in the English language. That the plaintiff, his uncle, never got any goods from this store after he dissolved partnership with the defendant Richard Kanan.

In the motion for a new trial upon the grounds of newly discovered evidence, the plaintiff presented an affidavit of one Pilot, to the effect that the defendant Richard Kanan approached Pilot, in the last part of April, or the first part of May, 1919, for the purpose of getting him to testify falsely that the plaintiff was a partner in his business at Fryburg, and that settlement was made at the termination of the partnership for the notes involved. That Richard Kanan admitted that he owed for the note. That he promised to pay Pilot well if he would so testify. He also produced the affidavit of one Fitzsimmons to the effect that, some three weeks after the dissolution of the partnership, he was in the store at Fryburg and overheard a conversation between the plaintiff and the defendant Richard Kanan concerning this indebtedness. That the defendant then refused to sign another note, but told the plaintiff that he would pay him every nickle. That Emil Kanan was not there at that time. He also produced the affidavit of one Kane in charge of records of the Northern Pacific Railway Company, to the effect that, in accordance with these records, Emil Kanan was in the employ of the railway company at Sunny, Morton county, in extra gang No. 6, from the 23d of February, 1918, to the 28th of February, 1918, inclusive, excepting Sunday, February 24th. Also, the affidavit of one Odeh was produced to the effect that he worked as a section hand in extra gang No. 6, and that from February 23d, to February 28th, inclusive, including Sunday the 24th, Emil Kanan was at Sunny, and worked on the week days mentioned. That he saw the check issued and the check received by Emil Kanan, the same being for $12. In addition the affidavit of the plaintiff is produced to the effect that he was not informed concerning the new issues framed when the trial was had; that he was not prepared to meet the same; that he was taken by surprise on account of the testimony offered; that immediately after the

termination of the trial he proceeded to investigate concerning the set-
tlement as testified in the evidence of the defendants. The affidavits
of the other witnesses mentioned stated that they communicated the
facts therein to the plaintiff after the trial.

As counter affidavits, the defendant Richard Kanan submits an af-
fidavit to the effect that Pilot and Fitzsimmons were creditors of the
defendant, and that he had trouble with them concerning the collection
of debts owing. He denied generally the statement contained in such
affidavits. Emil Kanan submits an affidavit to the effect that he told
the attorney for the plaintiff concerning the matters upon which he
testified, and that he was at Fryburg about the middle or latter part of
February. An affidavit of the attorney for the defendant likewise
was submitted, to the effect that he talked with the plaintiff's attorney
before the trial, about information that he had received from Emil
Kanan concerning a settlement that had been made.

*Opinion.*—This case is presented to this court for a review *de novo*
upon the entire record. Manifestly the right of the defendants to
prevail depends upon the issue of payment and settlement of the note
and mortgage involved. In the evidence there is a sharp conflict upon
this issue. The plaintiff claims that his signature to this receipt was
a forgery. From the record it is difficult to determine the total amount
that the defendants claim to have paid the plaintiff to effect such settle-
ment. The statement of the account offered in evidence totals $512,
not $700. The evidence otherwise offered covers $190 merchandise
furnished, $250 cash paid and $238, the aggregate of the other bills
owing by the plaintiff, making a total of $678. The note then amounted
to about $765. The burden was on the defendant to establish by proof
the payment and the settlement made. Upon a review and retrial of
the entire evidence as submitted at the trial, this court would hesitate
to reverse the findings of the trial court. In view, however, of the strong
showing of newly discovered evidence submitted by affidavits, which
is not merely cumulative or impeaching in its character, but material
upon the main issue involved herein, this court is unable to state or
hold, upon this record, that the defendants have established sufficiently
proof of the payment and settlement of the note and mortgage involved.
In our opinion the plaintiff has sufficiently established grounds for a
new trial upon the grounds of newly discovered evidence. See Aylmer

v. Adams, 30 N. D. 514, 153 N. W. 419; Keystone Grain Co. v. Johnson, 38 N. D. 562, 165 N. W. 977; State ex rel. Berndt v. Templeton, 21 N. D. 470, 130 N. W. 1009.

Through this newly discovered evidence, the testimony in the record is rendered sufficiently uncertain and indefinite to warrant this court, in the interest of substantial justice, to direct that a new trial be granted. Landis v. Knight, 23 N. D. 450, 137 N. W. 477. It is therefore ordered that the case be remanded to the trial court for a new trial, with costs to abide the event of such trial.

BIRDZELL, GRACE and ROBINSON, JJ., concur.

CHRISTIANSON, Ch. J. (concurring). This case was tried before Judge W. C. Crawford. Judgment was rendered in September, 1919. Judge Crawford being absent, the motion for a new trial was made before Judge J. M. Hanley in March, 1920. The statement of the case was not settled until about April 26, 1920. In the circumstances Judge Hanley was in no better—nor as good—position as the members of this court, to pass upon the question whether a new trial should be granted. He had before him nothing but the lifeless affidavits; and he did not have the benefit of the settled statement and extended briefs and argument with which the members of this court have been favored. Hence the well-known rule that "the granting or refusal of a new trial on the ground of newly discovered evidence rests in the sound, judicial discretion of the trial court" has little or no application. The basic reason for the rule is absent. See Braithwaite v. Aiken, 2 N. D. 57, 63, 49 N. W. 419. If the motion for a new trial had been made before and determined by the judge who tried the suit, I should not feel disposed to disturb either the judgment or the order denying a new trial. But in view of all the circumstances, I believe that the ends of justice will be best subserved by remanding the case for a new trial. I therefore concur in the opinion prepared by Mr. Justice Bronson.