[File No. 7329]

MADS PETERSON, Respondent, v. MITCHELL BOBER, Appellant.

(56 NW2d 331)

Opinion filed December 19, 1952

*Quentin N. Burdick,* for appellant.

*G. O. Brekke* and *Richard H. McGee,* for respondent.

GRIMSON, J. This is an action to recover damages alleged to have been sustained by the plaintiff through the negligence of the defendant in driving his automobile upon and over the plaintiff as he was crossing a street in the City of Minot. The defendant makes general denial except he admits the accident. He pleads contributory negligence and that the plaintiff is not the real party in interest. At the conclusion of the plaintiff's case and again at the conclusion of the entire case the defendant moved for a directed verdict in favor of the defendant and for a dismissal of the action on the ground that the plaintiff had wholly failed to sustain the allegations of his complaint, and on the further ground that the evidence showed the plaintiff had been guilty of contributory negligence. Both motions were denied. The jury rendered a verdict in favor of the plaintiff. Defendant then moved for judgment notwithstanding the verdict or for a new trial. That motion was denied. Thereafter defendant moved for new trial on the ground of newly discovered evidence. That motion was denied. This appeal is from the judgment and

from the order denying defendant's motion for judgment notwithstanding the verdict or for a new trial and from the order denying defendant's motion for a new trial upon newly discovered evidence.

The evidence discloses that on a Saturday night, Oct. 21, 1950, about 8 o'clock P.M. the defendant was driving a new Cadillac automobile in a northerly direction on the viaduct over the Great Northern Railway and the Mouse River on Second Street Northwest, in the City of Minot. He had his driving lights turned on low beam for city driving. His car was in good order and with four wheel brakes. "Whiteway" lights along the viaduct, each of about 600 candle power were burning. One of said lights was on the east side about 8 feet south of the foot of the viaduct and another one about 150 feet further south along the street on the east side of the viaduct. On the west side the lights were placed to alternate with those on the east side. The plaintiff was walking north along the sidewalk on the east side of the driveway on said viaduct. Separating the sidewalk from the driveway is a railing, a thin, iron wall 33½ inches high. At the foot of the viaduct Third Avenue Northwest makes a "T" intersection with Second St. NW. That is, Third Ave. NW branches off Second St. NW at that point towards the west but does not extend east beyond Second St. NW. One light post was located by the iron railing separating the sidewalk from the driveway within about 8 feet of the foot of the viaduct. It had been raining or misting earlier in the evening and defendant claims the blocks in the pavement on the viaduct were icy. The defendant claims he had stopped his car on the top of the viaduct intending to make a left turn down the west wing of the viaduct on Second Ave. NW. He gave that up on account of the oncoming traffic and continued down the incline of the viaduct some 200 feet. When the plaintiff reached the foot of the viaduct he turned west to his left intending to cross Second St. NW. He claims he looked both north and south on Second St. NW., noticing cars coming from the north but attempted to cross before they came. When he reached almost the center of the street he was hit by the defendant's car, which he had not seen,

coming from the south. Defendant admits that he had not seen plaintiff on the sidewalk but claims that he looked ahead and first saw the plaintiff when he came "stumbling" out from behind the railing on the viaduct about 12 feet ahead of him. He claims he put on the brakes and "cramped the wheel to the right" but he hit the plaintiff with his left, front bumper and fender, knocked him down and injured him severely. He admits that if he could have straightened his car out he would have had room to pass plaintiff on the east with a few inches to spare. He claims he had been going at a speed of 10 to 15 miles an hour and that he got his car stopped within two feet beyond the point of collision. One policeman testified that defendant had claimed water on his windshield had obscured his vision. The police and ambulance came and took the plaintiff to the hospital where it was found that he had sustained traumatic shock, a compound, comminuted fracture of the lower left leg two inches above the ankle joint, lineal skull fracture in the left temple region and had suffered a severe concussion of the brain. There is some conflict in the testimony as to where the plaintiff lay after the collision. The defendant claims plaintiff lay about 10 or 12 feet from the east curb of the street. The police testify that he lay in the center of the street, 15 or 17 feet from the east curb, "the feet in line with the bottom of the viaduct and the rest of the body upon the viaduct on the slope itself." There is some testimony that the plaintiff smelled of liquor as he was picked up and that a half-pint bottle of whiskey, partially consumed, dropped out of his pocket as he was being taken into the elevator at the hospital.

The appellant claims the trial court erred in denying the motions for a directed verdict and for a dismissal on account of insufficiency of the evidence and because of contribuory negligence of the defendant. Before such motion can be granted the evidence must show that the moving party is entitled to judgment upon the merits as a matter of law. Negligence is ordinarily a question of fact and becomes a question of law only when but one conclusion can be drawn from the facts. The questions of negligence and proximate cause become a question of law only when the evidence is such that different minds

cannot reasonably draw different conclusions either as to the facts or as to the deductions from the facts. Pachl v. Officer, ante, 143, 54 NW2d 883; State ex rel. Brazerol v. Yellow Cab Company, 62 ND 733, 245 NW 382 and cases cited. First State Bank v. Kelly, 30 ND 84, 98, 152 NW 125, Ann Cas 1917D 1044.

Defendant contends that the only negligence by the defendant alleged in the complaint is excessive speed and that there is no evidence to sustain that allegation. The complaint contains a general allegation that "said defendant negligently drove, managed, operated and ran his said automobile upon and against and over the plaintiff . . . ." Then follows a statement of plaintiff's injuries and damages after which it is alleged that "at said time and place defendant so negligently handled, managed, operated and controlled his said automobile, which was then driven by said defendant at an excessive rate of speed and without regard for plaintiff's safety, and so as to cause the injuries above set forth." Liberally construed that complaint alleges not only excessive speed but negligence in the operation of the automobile without due regard for plaintiff's safety. Under that complaint evidence was introduced and admitted without objection to show the defendant's failure to observe the plaintiff as he walked down the sidewalk of the viaduct which would have been necessary for the due regard to plaintiff's safety. That may be construed to show defendant's failure to keep a proper lookout.

Defendant admits that he did not see plaintiff walking along the sidewalk. He admits the pavement was wet and icy. He was on a down grade. There was much traffic over the highway. Defendant was well acquainted with the location and use of that viaduct. He says he was driving 10 to 15 miles an hour. He was unable to stop when the emergency, which well could have been anticipated under the existing conditions, arose.

The evidence on these matters was properly received under the complaint. From that evidence the jury could draw inferences as to whether the defendant was driving at the proper speed under the circumstances, (Sec. 39–0901 NDRC 1943) whether he had proper control of his car and whether he maintained a proper lookout.

The evidence on plaintiff's contributory negligence shows that he walked into the street without noticing defendant's car coming down the viaduct incline. There is some evidence from which the inference can be drawn that he was partially under the influence of liquor. He, however, got almost half way across the street and there was room for the defendant to pass between him and the east curb.

Thus there is evidence from which an inference of negligence can be drawn on the part of both plaintiff and defendant. We are of the opinion different minds may reasonably draw different conclusions as to the negligence of each of the parties and as to whose negligence was the contributory cause of the accident.

We conclude that the questions of negligence of the defendant and of the contributory negligence of the plaintiff were matters for the jury and that the denial of the motions for a directed verdict and for a dismissal on the ground of the insufficiency of the evidence was proper. Neither was there any error in the denial of the motion for judgment notwithstanding the verdict or for a new trial on that ground.

Defendant contends that there were two errors in the instructions of the court. He complains of the instruction given by the court on the right of way of the pedestrian crossing the highway within a clearly marked cross walk or regular pedestrian crossing. The evidence, however, shows that such a crossing did exist at the foot of the viaduct and the jury was properly instructed on the pedestrian's right of way.

Another alleged error in the instructions concerns the statement of the court as to the plaintiff's complaint. The court did not read the complaint to the jury but stated the substance thereof. We find no error therein.

Defendant assigns several errors by the court in refusing to give his requested instructions. He makes no argument on such alleged errors and they may be presumed to have been waived. We find, however, by examination of the court's instructions that the subject matters of all those requests, which he was entitled to have given to the jury, were adequately covered in the instructions.

In his answer the defendant alleges that the plaintiff was not

the real party in interest. Defendant assigns as error the refusal of the court to allow him to prove an assignment of this claim on the cross examination of one of plaintiff's witnesses. As a part of his case plaintiff had called the public administrator of Ward County, who had been appointed to take charge of plaintiff's affairs during his illness, to show the plaintiff's hospital and doctor bills that he had paid. On cross examination defendant attempted to show by that witness an assignment of a claim for damages to the Railway Retirement Board. Plaintiff objected to that question as improper order of proof and improper cross examination.

It is clear that this was an attempt by the defendant to prove his affirmative defense on that cross examination. The only matter in the direct examination under which defendant claims to have a right to cross examine along that line was the question: "And did you look after his business"? Ans: "I did" and the witness' voluntary statement later, "From the date of my appointment I looked after his financial affairs during his illness." This occurred while plaintiff was laying his foundation for the introduction of the bills. That direct examination cannot be considered as sufficient upon which to base a cross-examination of the alleged assignment of the claim to prove defendant's affirmative defense. Schnase v. Goetz, 18 ND 594, 120 NW 553, is cited by plaintiff in support of his contention but in that case the cross examination was on the same particular subject as had been brought out on direct examination. It was also concerning the conviction of the witness of a crime which is always admissible on cross examination as bearing on the credibility of the witness. The cross examination and the order of proof are clearly within the discretion of the court. La Mar v. La Mar, 135 Cal App 693, 28 P2d 63; City of Philadelphia v. Stange, 103 Pa Super 275, 157 A 358; Kelly v. Halox, 256 Mass 5, 152 NE 236. The defendant failed to recall the public administrator on his defense to show such an assignment in support of his affirmative defense. Under the circumstances he cannot be said to have been prejudiced by the ruling of the court.

Error is assigned on the overruling of defendant's objection to any further evidence on the part of the plaintiff after he

admitted that he did not-remember anything after the collision. The testimony brought out after that admission was as to matters that occurred before the collision and his general knowledge of the viaduct and roads leading to and from his home. No attempt was made to go into what happened after the collision with this witness. The court instructed the jury that "In determining the weight to be given to the testimony of the witnesses you will take into consideration their intelligence, strength and weakness of their recollection, the mental capacity for knowing, their means of knowing, that about which they testify . . . ." The continuation of the examination of plaintiff with this cautionary instruction to the jury could not have been prejudicial to the defendant.

The specification that excessive damages appear to have been allowed by the jury under the influence of passion and prejudice was not argued in the brief and is deemed to have been abandoned on appeal. Olson v. Armour & Co. 68 ND 272, 280 NW 200.

Finally, defendant assigns error on the refusal of the trial court to grant a new trial on the ground of newly discovered evidence.

This court has repeatedly held that the granting of a new trial on the ground of newly discovered evidence is a matter largely discretionary with the trial court. Pengilly v. J. I. Case Threshing Machine Co. 11 ND 249, 91 NW 63; McGregor v. Great Northern Ry. Co. 31 ND 471, 154 NW 261, Ann Cas 1917E 141; Keystone Grain Co. v. Johnson, 38 ND 562, 165 NW 977; Eckstrand v. Johnson, 40 ND 294, 168 NW 824; Farmers State Bank of Cathay v. Jeske, 50 ND 813, 197 NW 854; Security State Bank of Strasburg v. Kramer, 51 ND 20, 198 NW 679; Pace v. North Dakota Workmen's Compensation Bureau, 51 ND 815, 201 NW 348; Baird v. Unterseher, 57 ND 885, 224 NW 306; Webster v. Ek, 62 ND 44, 241 NW 503; Derrick v. Klein, 64 ND 438, 253 NW 70; Olson v. Carlson, 69 ND 732, 290 NW 243; Valencia v. Markham Co-operative Association, 210 Minn 221, 297 NW 736.

Applications for a new trial on the ground of newly discovered evidence should be scanned carefully for a showing

of diligence. Braithwaite v. Aiken, 2 ND 57, 49 NW 419; Eller v. Paul Revere Life Insurance Co., 230 Iowa 1255, 300 NW 535; Shivers v. Palmer, 59 Cal App2d 572, 139 P2d 952; McGregor v. G. N. Ry. Co., supra.

Judge Christianson in the opinion of this court in the case of Aylmer v. Adams, 30 ND 514, 153 NW 419, thoroughly discusses the duties of the trial court and the principles to be considered by the court in passing on the application for a new trial on the ground of newly discovered evidence. He says: "The discretion vested in a trial court in the determination of such motions is based on the theory 'that the judge who tries a case, having the parties, their witnesses and counsel, before him, with opportunity to observe their demeanor and conduct during the trial, and note all incidents occurring during its progress likely to affect the result thereof, is better qualified to judge whether a fair trial has been had and substantial justice done than the appellate tribunal . . . . It is generally considered that no arbitrary or inflexible rule can be laid down, but that the question of whether or not the trial court's discretion in granting or denying a new trial was properly exercised will largely depend upon the peculiar circumstances of each case.

"Motions for a new trial upon the ground of newly discovered evidence . . . are addressed to the sound discretion of the court, and whether they should be granted or refused involves the inquiry whether substantial justice has been done, the court having in view solely the attainment of that end. Barrett v. Third Ave. R. Co. 45 NY 632; Glassford v. Lewis, 82 Hun 46, 31 NY Supp 162. The discretion to be exercised is legal and not arbitrary. Carpenter v. Coe (NY) 67 Barb 411; Platt v. Munroe (NY) 34 Barb 291." Bayles on New Trials and Appeals, 2d Ed p 574.

Our statute provides: "That the newly discovered evidence must be material to the party making the application." 28–1902 Sub. Sec. 4, NDRC 1943. On this it is said in Aylmer v. Adams, supra, that: "In determining the materiality and sufficiency of the evidence, it is frequently suggested that such evidence must be of such character that it will probably change the result upon

a retrial. The reason for this is obvious. A new trial should not be granted as a mere empty ceremony. Hence, necessarily a trial court before granting a new trial should be satisfied that the former verdict was unjust, and that the newly discovered evidence, when weighed with the evidence received at the trial, will probably result in a different verdict upon the retrial. . . . The presumption is that the verdict of a jury is right, but if the unsuccessful party discovers after trial new evidence which he could not with reasonable diligence have discovered and produced at the trial, of such character as to convince the court that an injustice has been done, and that a new trial probably will change the result, then a new trial should be granted."

"To constitute sufficient ground for a new trial, newly discovered evidence must not only be relevant and material to the principal issues in the case, but must be sufficiently strong to make it probable that a different result would be obtained in another trial. . . . A dispute as to whether the new evidence has this probative effect is to be determined primarily by the trial court in its discretion. Nor will a reversal be ordered unless an abuse of discretion is disclosed." 39 Am Jur New Trial, sec. 165, p 172.

: The primary question before the Supreme Court on an appeal from a decision of the trial court on an application for a new trial on the ground of newly discovered evidence is whether the trial court abused its discretion in denying or granting the application. Jensen v. Clausen, 34 ND 637, 159 NW 30; Standard Oil Co. v. Kennedy, 54 ND 31, 208 NW 555; Van Nice v. Christian Reformed Church of Hull, 59 ND 564, 231 NW 604; King v. Consolidated Products Co. 159 Kan 608, 157 P2d 541, 158 ALR 1248; Larson v. Rustad, 66 ND 261, 264 NW 526.

"In the reviewing tribunal the weight and credibility of testimony will only be considered with a view to determine whether the order made in an inferior court, when acting within the domain of discretion was or was not an abuse of discretion." Aylmer v. Adams, supra.

"While it may be difficult to define exactly what is meant by abuse of judicial discretion, and whatever it may imply as

to the disposition and motives of the judge, it is fairly deducible from the cases that one of its essential attributes is that it must plainly appear to effect injustice." Clavey v. Lord, 87 Cal 413, 25 P 493.

Testing the newly discovered evidence by these principles, can we say trial court abused its discretion in denying a new trial? We have held there was evidence to support the verdict. The jury could, perhaps, have rendered a verdict either way. In neither case could we say the jury erred or that an injustice was done.

The trial court stated that there was a serious question as to whether due diligence had been shown in the obtaining of the evidence. There is some merit to that conclusion. It is doubtful if due diligence was shown. Braithwaite v. Aiken, 2 ND 57, 49 NW 419; Shivers v. Palmer, 59 Cal App2d 572, 139 P2d 952. The court, however, does not decide this motion on that ground but on the merits of the evidence disclosed by the affidavit of the new witness. That affidavit reads as follows:

"Fred Baehm, being first duly sworn, deposes and says that he is a resident of Minot, Ward County, North Dakota, and has been for approximately 20 years; that he is employed by the Minot Roofing Company; that he is 52 years of age and married;

That on the evening when the accident occurred between Mitchell Bober and Mads Peterson, this affiant was walking homeward in a northerly direction along the west side of the Second Street Viaduct, in the City of Minot, Ward County, North Dakota; there were many cars moving northward along the viaduct following close to each other, and moving very slowly, not to exceed 10 miles per hour; the cars had their lights on and the street lights were on; the weather was nice; this affiant was attracted to the traffic because of the unusual number of cars, and was watching them as he walked along; suddenly one of the cars put on its brakes and stopped at the foot of the viaduct and this affiant noticed a pedestrian coming off the east sidewalk to cross over to the west side; when the car stopped, the pedestrian stepped back on the walk; the car commenced to move, the pedestrian stepped back again to the

sidewalk; the pedestrian then started to walk along the sidewalk in a northerly direction and on the east sidewalk; he walked about 15 feet, and then stepped out into the traffic again to cross; the car was moving slowly; the pedestrian stepped out in front of it, he went down to the pavement and rolled out like a ball from between the front and back wheel of the car on the left hand side of the car, and rolled away from the car in a southerly direction, and then straightened out on the pavement with his head toward the east; the car stopped immediately; it was going not over five miles per hour; this affiant went over to where the plaintiff lay; he saw that the pedestrian was a man whom he had seen many times in beer parlors and recognized as a man whom he had never seen in a sober condition, altho he saw him about once a week; there was some little time elapsed before the ambulance came; when it came someone asked the pedestrian what hospital he wanted to be taken to, and he said, 'Please take me home;' That by this time the driver had moved the car a short distance to let the traffic go past; when the car stopped the first time immediately after the accident, it was near the pedestrian on the pavement, and not more than four feet from the east curb;

The pedestrian walked with a peculiar gait, sort of a stumbling walk."

Regarding this affidavit trial court says: "The court feels that the newly discovered evidence is not apt to change the result of the lawsuit." The court bases this in part at least, on that part of the affidavit where affiant says that he saw an automobile come to a stop at the foot of the viaduct when a pedestrian had stepped off the east sidewalk to cross to the west side; that the pedestrian stepped back on the walk and walked along the sidewalk in a northerly direction 15 feet while the automobile started moving slowly; that the pedestrian then stepped again into the street in front of the car and was run over. The court calls attention to the fact that this is in direct conflict with the testimony of the defendant himself, who had claimed at the trial that he did not see anybody along the sidewalk and not until an instant before the collision and the court says: "If the new witness' story is correct, the court does not understand

at all how it would be possible for the defendant to strike and hit the plaintiff without being careless." On that theory the new evidence was not material to the defendant who is asking for a new trial to present this evidence.

The evidence of this new witness as indicated in the affidavit would contradict almost every witness that testified in the case. It places the accident in a different place from that to which both plaintiff and defendant testified. It gives an entirely new and different version of the action of the parties leading up to the accident. Inference from this newly discovered evidence is that the plaintiff stepped out from the sidewalk to cross the street; that the defendant saw plaintiff and stopped his car; that the plaintiff then stepped back to the sidewalk and walked along for 15 feet into the intersection and then again stepped into the street. In the meantime according to this affidavit the defendant again started his car driving slowly, apparently behind the plaintiff and at the end of the 15 feet overtook him and ran over him in the intersection; that his car then was not more than four feet from the east curb. For this to happen both plaintiff and defendant, who moments before had taken precaution to avoid a collision, and necessarily must then have seen each other, now in travelling the short space of 15 feet had so completely forgotten each other's presence that the collision actually occurred.

Furthermore, according to the affidavit plaintiff walked not only the 15 feet but far enough into the street so as to be hit by the left front fender of defendant's car. There was apparently a space of 4 feet between the car and the east curb. To reach the left front fender plaintiff would walk at least 3 feet further or 7 feet in all from the east curb. The plaintiff would then have walked 15 feet on the sidewalk and 7 feet into the street or 22 feet in all while defendant drove his car 15 feet at the rate of 5 miles an hour. That seems somewhat improbable. If true, defendant would have had a clear space of about 7 feet in which to pass the plaintiff on the east side had he been watching.

This testimony does not seem to make the defendant's contentions any more clear. Considered with the testimony given at the trial different minds could still reasonably draw different

conclusions as to who was to blame and whose negligence was a contributing cause of the accident. It would still be a matter for the jury and verdict again for the plaintiff could still be sustained.

"Whether a new trial ought to be granted is primarily a question for the trial court. The function of this court on appeal is merely to review the ruling of the trial court on the motion, and such review is limited to a determination of whether the trial court abused its discretion and effected an injustice by denying a new trial. The discretion vested in the trial court should always be exercised in the interests of justice. The presumption is that it was so exercised." Eckstrand v. Johnson, 40 ND 294, 297, 168 NW 824.

Evidently the trial court was of the opinion that substantial justice had been accomplished at the former trial and that the interests of justice would not be served by granting a new trial on the newly discovered evidence. We do not find that the trial court abused its discretion in that decision.

Finding no prejudicial error in the record the orders and judgment of the district court are affirmed.

MORRIS, C. J., and CHRISTIANSON, SATHRE and BURKE, JJ., concur.