Bradley KEYES, Plaintiff and Appellee,

v.

Susan AMUNDSON, Defendant
and Appellant,

Robert Amundson and Getter Trucking,
Inc., Defendants,

Craig Stoner and G & J Hotshot
Service, Inc., Defendants and
Appellants.

Civ. No. 11093.

Supreme Court of North Dakota.

July 16, 1986.

not consider the additional issues raised by the amicus curiae.

Greenwood, Greenwood & Greenwood, Dickinson, for plaintiff and appellee; argued by Dann E. Greenwood.

Bjella, Neff, Rathert, Wahl & Eiken, Williston, for defendant and appellant Susan Amundson; argued by Paul W. Jacobson.

McIntee & Whisenand, Williston, for defendant Getter Trucking, Inc.

Letnes, Marshall, Fiedler & Clapp, Ltd., Grand Forks, for defendants and appellants Craig Stoner and G & J Hotshot Service, Inc.; argued by Jay H. Fiedler.

ERICKSTAD, Chief Justice.

Susan Amundson, Craig Stoner, and G & J Hotshot Service, Inc. (hereinafter collectively referred to as appellants unless the context requires otherwise) appeal from an amended judgment entered upon a jury verdict, an order denying their motion for judgment notwithstanding the verdict, and an order denying their motion for a new trial. We reverse and remand for a new trial.

This action arose out of a motorcycle-automobile accident which occurred on August 4, 1981, in Williston, North Dakota. Bradley Keyes was riding his motorcycle west on 26th Street when Amundson pulled out from a stop sign into the path of his oncoming motorcycle. Amundson and Keyes' vision was allegedly obstructed by a semi-trailer truck which had been parked by Stoner on 26th Street near the intersection. Keyes alleged that Stoner was acting as an agent for Getter Trucking, Inc. (Getter) and G & J at the time of the accident.

Keyes was seriously injured in the accident and commenced the instant action to recover damages. The case was tried to a

jury, and it returned a verdict apportioning negligence in the following amounts: Keyes—40%; Amundson—40%; and Stoner—20%. The trial court concluded that Keyes was not entitled to recover damages under our comparative negligence statute, Section 9–10–07, N.D.C.C., and his action was dismissed.

In *Keyes v. Amundson*, 343 N.W.2d 78 (N.D.1983), we concluded that jury misconduct caused extraneous prejudicial information to reach the jury and there was a reasonable possibility that the information could have affected the verdict of a hypothetical average jury. Accordingly, we reversed and remanded for a new trial.

The case was again tried to a jury, and it returned a verdict apportioning negligence in the following amounts: Keyes—10%; Amundson—15%; and Stoner—75%. Additionally, the jury determined that Keyes could have avoided one percent of his injuries by using a helmet or other protective clothing, and it found Keyes' damages, without diminution for his own negligence, to be $500,000. Each defendant moved for a judgment notwithstanding the verdict, or, in the alternative, for a new trial. The trial court denied the defendants' motions for judgment notwithstanding the verdict and for a new trial and granted Getter Trucking's motion for a new trial on the limited issue of agency. Shortly thereafter, the defendants discovered a previously unknown eyewitness to the accident, and they moved for a new trial on the basis of newly discovered evidence. The trial court denied their motion, and they appealed.[1]

The appellants contend that the trial court abused its discretion in denying their motion for a new trial on the basis of newly discovered evidence pursuant to Rule 59(b)(4), N.D.R.Civ.P. After the second trial, the appellants discovered an eyewitness to the accident, Wayne Beard, whose existence was previously unknown to them. In an affidavit in support of the motion for a new trial, Beard states that, at the time of the accident, he was riding a bicycle east on 26th Street about 150 feet to the west of the intersection where the accident occurred; that he was familiar with the operation of motorcycles; that he heard the noise of the motorcycle winding up or accelerating for approximately three seconds; that he saw the motorcycle approaching the intersection and saw the collision; that he observed the motorcycle for a sufficient time to accurately estimate its speed; and that he believed the motorcycle was traveling 40 to 45 miles per hour.

Rule 59(b)(4), N.D.R.Civ.P., provides:

*"(b) Causes for New Trial.* The former verdict or other decision may be vacated and a new trial granted on the application of a party aggrieved for any of the following causes materially affecting the substantial rights of the party:

\* \* \* \* \* \*

"4. Newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial; ..."

A motion for a new trial on the basis of newly discovered evidence is addressed to the discretion of the trial court and will not be overturned on appeal absent an abuse of discretion. *Farmers Elevator Co. of Horace v. Nagel*, 307 N.W.2d 580 (N.D.1981). Whether the trial court's discretion was properly exercised depends upon the facts and circumstances of each case. *Peterson v. Bober*, 79 N.D. 300, 56 N.W.2d 331 (1952).[2]

---

1. Getter has not appealed.

2. *Peterson v. Bober, supra,* was decided under Section 28–1902(4), N.D.Rev.Code 1943, the predecessor to Rule 59(b)(4), N.D.R.Civ.P. Section 28–1902(4), N.D.Rev.Code 1943, provided:
   *"Causes for New Trial.* The former verdict or other decision may be vacated and a new trial granted on the application of the party aggrieved for any of the following causes materially affecting the substantial rights of such party:

   \* \* \* \* \* \*

   "4. Newly discovered evidence material to the party making the application, which he could not with reasonable diligence have discovered and produced at the trial; ..."

The following requirements must be met before a new trial will be granted on the basis of newly discovered evidence: (1) the evidence must have been discovered following trial, *Erdahl v. Hegg,* 110 N.W.2d 355 (N.D.1961); (2) the movant must have exercised due diligence in discovering the evidence, *Hefty v. Aldrich,* 220 N.W.2d 840 (N.D.1974); (3) the evidence must not be merely cumulative or impeaching, *Webster v. Ek,* 62 N.D. 44, 241 N.W. 503 (1932); (4) the evidence must be material and admissible, *Farmers Elevator Co. of Horace v. Nagel, supra;* and (5) the evidence must be such that a new trial would probably produce a different result, *Peterson v. Bober, supra.*

In the instant case, the trial court made the following findings:

"I.

"That the prooffered [sic] evidence was newly discovered after the second trial herein.

"II.

"That the Defendants exercised reasonable diligence in attempting to locate evidence of this type.

"III.

"That the newly discovered evidence is neither merely cummulative [sic] nor impeaching.

"IV.

"That the newly discovered evidence is material.

"V.

"That the Court cannot, and does not, find that the newly discovered evidence is of such a character that it is probable that a new trial would produce a new result based thereon."

In *Peterson v. Bober, supra,* 56 N.W.2d at 337–38, we said:

"... whether [motions for a new trial upon the ground of newly discovered evidence] should be granted or refused involves the inquiry whether substantial justice has been done; the court having in view solely the attainment of that end.... The discretion to be exercised is legal, and not arbitrary....

"Our statute provides that the: 'Newly discovered evidence [must be] material to the party making the application'. 28–1902, Subsec. 4, NDRC 1943. On that it is said in Aylmer v. Adams, supra, that: 'In determining the materiality and sufficiency of the evidence it is frequently suggested that such evidence must be of such character that it will probably change the result upon a retrial. The reason for this is obvious. A new trial should not be granted as a mere empty ceremony. Hence necessarily a trial court, before granting a new trial, should be satisfied that the former verdict was unjust, and that the newly discovered evidence, when weighed with the evidence received at the trial, will probably result in a different verdict upon the retrial. * * * The presumption is that the verdict of a jury is right, but if the unsuccessful party discovers after trial new evidence, which he could not with reasonable diligence have discovered and produced at the trial, of such character as to convince the court that an injustice has been done, and that a new trial probably will change the result, then a new trial should be granted.'

" 'To constitute sufficient ground for a new trial, newly discovered evidence must not only be relevant and material to the principal issues in the case, but must be sufficiently strong to make it probable that a different result would be obtained in another trial. * * * A dispute as to whether the new evidence has this probative effect is to be determined primarily by the trial court in its discretion. Nor will a reversal be ordered unless an abuse of discretion is disclosed.' " [Citations omitted.]

In the instant case, a critical issue at trial was the speed Keyes was traveling at the time of the accident. The posted speed limit on 26th Street was 30 miles per hour. Keyes testified that he had no recollection

of the events immediately preceding the accident other than that his speed was 25 to 30 miles per hour after he turned onto 26th Street several blocks before the accident. Amundson testified that Keyes' motorcycle was right next to the front of the truck when she first saw it, and she described the impact as "large jolt." However, she was not able to testify to the motorcycle's speed. Amundson and Keyes were the only witnesses to the accident who testified at trial, and the other evidence presented to the jury concerning the speed of Keyes' motorcycle came from experts who reconstructed the accident.

Keyes' accident reconstruction expert, Phillip Hight, opined that the speed of Keyes' motorcycle at the time of the accident was 27 to 33 miles per hour. Hight's opinion was based on a momentum analysis using Amundson's cornering speed and normal cornering speed; an evaluation of the damage to the vehicles; a correlation of the injuries suffered by the parties; and a momentum vector analysis. The appellants' accident reconstruction expert, William Otto, opined that Keyes was operating his motorcycle at approximately 45 miles per hour at the time of the accident. Otto's opinion was based in part upon a crash test. On rebuttal, Keyes recalled Hight and also called Harry Peterson to refute Otto's opinion.

■ Beard's testimony is highly relevant to the issue of the speed of the motorcycle and whether Keyes was accelerating at the time of the accident. In fact, the trial court specifically found that the evidence was material and neither merely cumulative nor impeaching. Testimony that the motorcycle was accelerating could have refuted or supported the assumptions upon which the experts based their opinions and, in this respect, provides an important link in the evidence. In a case such as this where there were no other eyewitnesses to the accident, the testimony of a newly discovered eyewitness creates a strong probability of a different result. *See Webster v.*

*Ek,* 62 N.D. 44, 241 N.W. 503 (1932) [trial court abused its discretion in denying motion for new trial on basis of newly discovered evidence of disinterested eyewitness to accident where the only other witnesses to testify to facts of collision were interested parties].

Nevertheless, Keyes contends that the newly discovered evidence was so weak and limited when compared to the testimony already given that it would not have produced a different result. Keyes also asserts that Beard's opinion on the speed of the motorcycle would be inadmissible due to lack of foundation.

■ Rule 701, N.D.R.Ev., provides that opinion testimony by a lay witness is admissible if the opinion is rationally based on the perception of the witness and helpful to a clear understanding of his testimony or the determination of a fact in issue. *See State v. Gill,* 154 N.W.2d 791 (N.D. 1967); *Knoepfle v. Suko,* 108 N.W.2d 456 (N.D.1961). The degree of opportunity for observation and the extent of the observation does not affect the competency of the witness but goes to the weight of the evidence. *State v. Gill, supra; Knoepfle v. Suko, supra.* In the instant case, we believe Beard's affidavits include a sufficient foundation to establish the admissibility of his testimony. Further, Beard's affidavit also indicates that he heard the motorcycle "winding up or accelerating" for three seconds. The noise of a vehicle also may be a factor in a lay person's determination of speed. *State v. Gill, supra.*

■ In view of the trial court's finding that the evidence was material and neither merely cumulative nor impeaching, and in the absence of an explanation by the trial court as to why the evidence would not change the result, we believe the newly discovered evidence was sufficiently strong to have a substantial impact on the allocation of negligence and probably would have produced a different result.[3] We believe

---

**3.** The appellants assert that if newly discovered evidence results in any change in the allocation

of percentages of negligence, there is a sufficient change in the result to warrant granting a

that the evidence was of such character that not permitting the jury to hear it would result in an injustice. Accordingly, we conclude that the trial court abused its discretion in denying the appellants' motion for a new trial, and we reverse and remand for new trial.

█ Stoner and G & J also contend that the trial court erred in denying their motion for judgment notwithstanding the verdict because the uncontroverted evidence established that the truck was parked 38 feet from the intersection of 26th Street in an area where there were no "no parking" signs. Thus, they assert that the truck was parked in conformity with the applicable parking ordinances and statutes, and therefore they were not negligent as a matter of law. However, compliance with the standard of care prescribed by a statute or ordinance is a minimum standard of care and does not preclude a finding that an actor was negligent in failing to take additional precautions. *Christou v. Arlington Park-Washington Park Race Tracks Corp.*, 104 Ill.App.3d 257, 60 Ill.Dec 21, 432 N.E.2d 920 (1982); *see* Prosser, Law of Torts, pp. 203–294 (4th Ed.1977); Restatement (Second) of Torts § 288C.

█ Stoner and G & J also contend that the parking of the truck on 26th Street was not the proximate cause of Keyes' injuries. Whether a breach of duty is the proximate cause of an injury depends on the facts and circumstances of each case and is a question of fact for the jury. *Jim's Hot Shot Service, Inc. v. Continental Western Ins. Co.*, 353 N.W.2d 279 (N.D.1984); *see Hagert v. Hatton Commodities, Inc.*, 384 N.W.2d 654 (N.D.1986) [whether damages were proximately caused by a breach of warranty is a question of fact].

█ In ruling on a motion for judgment notwithstanding the verdict, the trial court must accept the truth of the evidence presented by the party opposing the motion and the truth of all reasonable inferences which support the jury verdict. *Hagert v. Hatton Commodities, Inc., supra.* Because proximate cause is a factual issue and the trial court must accept the truth of all reasonable inferences supporting the jury verdict, we conclude that the trial court did not err in denying Stoner and G & J's motion for judgment notwithstanding the verdict.

Because some of the remaining issues raised on appeal may arise during the new trial, we will comment on those issues in the interest of judicial economy.

█ In the absence of a statutory requirement, courts of general jurisdiction may not take judicial notice of a municipal ordinance, and the ordinance must be introduced into evidence or stipulated to by the parties just as any other evidence. *Concrete Contractor, Inc. v. City of Arvada*, 621 P.2d 320 (Colo.1981), *on remand* 628 P.2d 170 (Colo.1981); *Hood v. Mayor and Alderman of City of Savannah*, 247 Ga. 524, 277 S.E.2d 54 (1981); *City of Cedar Rapids v. Cach*, 299 N.W.2d 656 (Iowa 1980); *General Motors Corporation v. Fair Employment Practices Division of Council and Human Relations of St. Louis*, 574 S.W.2d 394 (Mo.1978); *Pelican Production Corporation v. Mize*, 573 P.2d 703 (Okla.1977); *see* 29 Am.Jur.2d, Evidence § 37 (1964).

Our decision in *Walter v. North Dakota State Highway Commissioner*, 391 N.W.2d 155 (N.D.1986), recognized that pursuant to Section 31–10–03, N.D.C.C., every court of this state shall take judicial notice of the common law and statutes of every state, territory, and other jurisdiction of the United States. That case involved state statutes as opposed to ordinances and

---

new trial. We recognize that different juries hearing the same evidence may allocate percentages of negligence in a different manner thereby producing a different "result." However, we need not decide whether any change in percentages would be a sufficient change in the result because we believe that, in conjunction with the

other evidence available to the jury, the newly discovered evidence was sufficiently strong to have a substantial impact on the allocation of negligence for the accident and may well have absolved one or more of the appellants from any liability.

is distinguishable because state statutes are compiled, published and distributed by recognized professional entities who must vouch for the integrity of their product and thus they are likely accurate, readily ascertainable and available while such is often not the case with ordinances.

The violation of a statute or ordinance may be considered as evidence of negligence. *Anderson v. Miller's Fairway Foods*, 225 N.W.2d 579 (N.D.1975); *Glatt v. Feist*, 156 N.W.2d 819 (N.D.1968). However, before the violation of an ordinance may be considered as evidence of negligence, the court must determine that a purpose of the ordinance was to protect the class of persons injured against the type of injury and harm suffered. Prosser, Law of Torts, pp. 192–197 (4th Ed.1971). Prosser recognizes three approaches in determining whether or not a plaintiff's injury is of the kind which a statute or ordinance was intended to prevent: (1) interpreting the purpose of the statute or ordinance and the harm to be prevented in a narrow manner; (2) interpreting the purpose of the statute or ordinance to include all risks that may reasonably be anticipated as likely to follow from its violation; and (3) interpreting the purpose of the statute or ordinance to include all risks that occur to anyone. Prosser, Law of Torts, pp. 196–197 (4th Ed.1971). We believe the appropriate approach in determining whether or not a plaintiff's injury is of the kind that an ordinance was intended to prevent requires interpreting the purpose of the ordinance to include all risks that may reasonably be anticipated as likely to follow from its violation. If the ordinance is received in evidence the trial court should admit evidence of a violation of the ordinance if it finds that the ordinance was intended to protect persons traveling on the streets from harm which may reasonably be anticipated as likely to follow from the violation.

The case is remanded for a new trial.

GIERKE, MESCHKE, LEVINE and VANDE WALLE, JJ., concur.