STATE of Wisconsin, Plaintiff-Respondent-Petitioner,

v.

Robert J. POH, Defendant-Appellant.

Supreme Court

*No. 82–1187–CR. Argued November 30, 1983.—*
*Decided January 31, 1984.*

(Also reported in 343 N.W.2d 108.)

511

512

For the plaintiff-respondent-petitioner the cause was argued by *Michael R. Klos,* assistant attorney general, with whom on the briefs was *Bronson C. La Follette,* attorney general.

For the defendant-appellant there was a brief and oral argument by *Michael Yovovich,* first assistant state public defender.

SHIRLEY S. ABRAHAMSON, J. This is a review of an unpublished decision of the court of appeals filed on April 5, 1983, reversing an order of the circuit court for Door county, S. Dean Pies, Circuit Judge, which denied defendant Robert Poh's motion for a new trial.

There are two issues on review. In its order granting the petition for review this court directed the parties to address the following issue: "Did the comments among

the jurors that are the subject of this case constitute extraneous prejudicial information . . . improperly brought to the jury's attention within the meaning of sec. 906.06(2), Stats.?" The parties also addressed the following issue: "What standard should a court use to assess whether reversal of a conviction is warranted when extraneous prejudicial information was improperly brought to the jury's attention?"

We hold that extraneous prejudicial information had been improperly brought to the jury's attention by one of the jurors and that the conviction must be reversed since there is a reasonable possibility that the error might have contributed to the conviction. Accordingly we affirm the decision of the court of appeals and remand the case to the circuit court for a new trial.

The facts relevant to the issues before this court are not in dispute. The defendant was convicted of three counts of homicide by negligent operation of a vehicle while under the influence of an intoxicant in violation of sec. 904.09, Stats. 1979–80.[1] Approximately one month after the trial, defendant moved for postconviction relief, alleging that the jury had considered extraneous prejudicial information. Defendant's motion was accompanied by an affidavit signed by juror McCain stating that during the course of jury deliberations two jurors commented about the defendant's prior driving accidents and traffic violations. Also attached to the motion were the written statements of seven jurors concerning the alleged comments.[2]

---

[1] Sec. 940.09, Stats. 1979–80, provided as follows:

"Whoever by the negligent operation or handling of a vehicle, firearm or airgun and while under the influence of an intoxicant causes the death of another is guilty of a Class D felony. No person may be convicted under this section except upon proof of causal negligence in addition to such operation or handling while under the influence of an intoxicant."

[2] This case does not involve the issue of a lawyer's or some other person's questioning the jurors outside the presence of the

The circuit court held an evidentiary hearing during which eleven of the twelve jurors were questioned individually to determine whether information outside the record had been brought to the jurors' attention, the nature of this information, and the circumstances under which the information had come to the jurors' attention. The circuit court avoided inquiry into the effects of this information on the jurors' mental processes or their deliberations. The procedure used by the circuit court in this case complied with sec. 906.06, Stats. 1981–82, and *After Hours Welding v. Laneil Management Co.,* 108 Wis. 2d 734, 742, 324 N.W.2d 686 (1982).

The circuit court found that extraneous prejudicial information had not been improperly brought to the jury's attention and that, if it had, the standard to apply to determine reversal was whether this error was "not prejudicial beyond a reasonable doubt." On appeal the court of appeals concluded that extraneous prejudicial information had been improperly brought to the jury's attention but did not decide what standard to use to assess whether this constituted prejudicial error. The court of appeals concluded, however, that the error was prejudicial no matter what standard was used and that the conviction had to be reversed.

When considering the impeachment of a verdict the trial court must consider (1) whether the evidence prof-

court, and we do not address it. For discussion of this subject *see, e.g., United States v. Harrelson* (5th Cir. 1983), 33 Cr. L. Rep. 2518; Standard 16, Standards Relating to Juror Use and Management, ABA Judicial Administration Division, Committee on Jury Standards, tent. draft, July 1982.

This case might have been avoided had there been a proper voir dire examination. The parties might have learned about the jurors' personal knowledge and made appropriate challenges to prospective jurors. Cautionary instructions might have been given. A transcript of the voir dire would have allowed for appellate review.

fered is competent under sec. 906.06(2), Stats. 1981–82; (2) whether there was error, that is, whether the evidence shows substantial grounds sufficient to overturn the verdict; and (3) whether the conviction should be overturned because the error was prejudicial. *After Hours, supra*, 108 Wis. 2d at 738. Although the first two issues relating to the evidence, namely, competency and sufficiency, and the third issue relating to harmless error overlap to some extent, we shall treat them separately as we did in *After Hours*.[3]

## I.

The first issue is an evidentiary one: the juror's competency to testify. May a juror testify as to the comments allegedly made by the jurors in this case? In other words, the issue is whether the alleged comments to the

[3] The ABA Standards for Criminal Justice (2d ed. 1980) similarly separates the issues.

Standard 15–4.7 relates to competency of evidence in impeachment of the verdict and provides as follows:

"(a) Upon an inquiry into the validity of a verdict, no evidence shall be received to show the effect of any statement, conduct, event, or condition upon the mind of a juror or concerning the mental processes by which the verdict was determined.

"(b) The limitations in paragraph (a) shall not bar evidence concerning whether the verdict was reached by lot.

"(c) Subject to the limitations in paragraph (a), a juror's testimony or affidavit shall be received when it concerns:

"(i) whether matters not in evidence came to the attention of one or more jurors, under circumstances which would violate the defendant's constitutional right to be confronted with the witnesses against him or her; or

"(ii) any other misconduct for which the jurisdiction permits jurors to impeach their verdict."

Standard 8–3.7, II ABA Standards for Criminal Justice (2d ed. 1980), relates to the sufficiency of the evidence to set aside the verdict and harmless error and provides as follows:

jurors in this case constitute extraneous prejudicial information improperly brought to the jury's attention within the meaning of sec. 906.06(2), Stats. 1981–82.

Sec. 906.06(2), which is virtually identical to Rule 606 (b) of the Federal Rules of Evidence, governs the competency of jurors to testify in an inquiry into the validity of the verdict. It provides as follows:

"Sec. 906.06(2) INQUIRY INTO VALIDITY OF VERDICT OR INDICTMENT. Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jury's attention or whether any outside influence was improperly brought to bear upon any juror. Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received."

As we explained in *After Hours*, sec. 906.06(2) seeks to reach an accommodation between two policies: protecting trial by jury and the finality of verdicts, and ensuring a just result in each case. The statute accomplishes this accommodation by prohibiting a juror's testimony as to statements made during deliberations and as to the deliberative processes of the jurors but allowing a

"On motion of the defendant, a verdict of guilty in any criminal case shall be set aside and a new trial granted whenever, on the basis of competent evidence, the court finds a substantial likelihood that the vote of one or more jurors was influenced by exposure to prejudicial matter relating to the defendant or to the case itself that was not part of the trial record on which the case was submitted to the jury. Nothing in this recommendation is intended to affect the rules or procedures in any jurisdiction concerning the impeachment of jury verdicts."

juror's testimony on occurrences and events outside the record which may indicate improper extraneous influences on the jury.[4] The cases illustrate the difficulties involved in distinguishing between "inherent" matters relating to the jurors' mental processes and deliberations as to which testimony is precluded and "extraneous" matters improperly brought to the jury's attention as to which testimony is permitted.[5]

Jurors are expected to bring commonly known facts and their experiences to bear in arriving at their verdict.[6] We cannot "expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions or their philosophies. These involve the very human elements that constitute one of the strengths of

---

[4] Weinstein and Berger, *Weinstein's Evidence* par. 606[03] (1982) ; 8 Wigmore, *Evidence* sec. 2346 (McNaughton ed. 1961) ; III ABA Standards for Criminal Justice, Standard 15–4.7, pp. 15–152–15–159 (2d ed. 1980) ; Comment, *Impeachment of Jury Verdicts*, 25 U. Chi. L. Rev. 360, 363 (1958) ; Note, *Impeachment of Jury Verdicts*, 53 Marq. L. Rev. 258, 261–62 (1970) ; *In re Beverly Hills Fire Litigation*, 695 F.2d 207, 213 (6th Cir. 1982) ; *Martinez v. Ford City, Inc.*, 658 F.2d 369, 373 (5th Cir. 1981) ; *United States v. Marques*, 600 F.2d 742, 747–48 (9th Cir. 1979), *cert. denied*, 444 U.S. 1019 (1980) ; and cases in Annot., *Admissibility and Effect, in Criminal Cases of Evidence as to Juror's Statements, During Deliberations, as to Facts Not Introduced into Evidence*, 58 ALR2d 556 (1958).

[5] *See, e.g., Gibson v. Clanon*, 633 F.2d 851 (9th Cir. 1980) ; *Government of Virgin Islands v. Gereau*, 523 F.2d 140, 150 (3d Cir. 1975) ; *United States v. Howard*, 506 F.2d 865, 866 (5th Cir. 1975) ; *United States ex rel. Owen v. McMann*, 435 F.2d 813 (2d Cir. 1970) ; *Farese v. United States*, 428 F.2d 178 (5th Cir. 1970), and cases cited therein at 180–81.

[6] "[I]t is an impossible standard to require that tribunal [the jury] to be a laboratory, completely sterilized and freed from any external factors." *Rideau v. Louisiana*, 373 U.S. 723, 733 (1963) (Clark, J., dissenting).

our jury system." *United States v. McKinney,* 429 F.2d 1019, 1022–23 (5th Cir. 1970).

Nevertheless, a fundamental principle of our justice system is that the government has the burden of establishing guilt beyond a reasonable doubt on the basis of evidence offered in the courtroom under the rules of evidence and under the supervision of the court. While the thirteenth century jury may have been selected because of its familiarity with background facts, the modern jury determines the merits of a case solely on the basis of the evidence developed before it in the adversary arena. "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado,* 205 U.S. 454, 462 (1907). See also *Irvin v. Dowd,* 366 U.S. 717, 722 (1961).[7]

By allowing a juror to testify as to whether extraneous, prejudicial information was improperly brought to the

---

[7] As one court explained:

"It is of course 'the very stuff of the jury system' for the jury to exercise its collective wisdom and experience in dissecting the evidence properly before it; and in this process the cross-pollination of opinion, viewpoint, and insight into human affairs is one of the jury's strengths. But this does not include communication from one juror to another of objective extrinsic facts regarding the criminal defendant or his alleged crimes." *United States v. Howard,* 506 F.2d 865, 867 (5th Cir. 1975).

Another court explained:

"All must recognize, of course, that a complete sanitizing of the jury room is impossible. We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies. . . . Nevertheless, while the jury may leaven its deliberation with its wisdom and experience, in doing so it must not bring extra *facts* into the jury room. In every criminal case we must endeavor to see that jurors do not [consider] in the confines of the jury room . . . specific facts

jury's attention, sec. 906.06(2) ensures that juries will reach verdicts on the basis of information known to the parties and affords the party whose case is negatively affected by the information a chance to probe and rebut.[8]

To demonstrate that a juror is competent to testify under sec. 906.06(2), the party seeking to impeach the verdict has the burden to prove that the juror's testimony concerns extraneous information (rather than the deliberative processes of the jurors), that the extraneous information was improperly brought to the jury's attention, and that the extraneous information was potentially prejudicial.

To determine whether these requirements were satisfied, we look first at the nature of the information about which the defendant seeks the juror's testimony. At the circuit court hearing juror McCain testified that during a bus ride back from dinner, approximately one or two hours before the jury's verdict, a juror she believed to be juror Koskubar informed her that the defendant "didn't have a driver's license at the time of the accident and that he had been involved in other accidents previously in which someone else had been killed." McCain said she told the juror she did not want to hear any more. McCain also testified that a person she believed to be juror Turk had stated, forty-five minutes to an hour before the jury

about the specific defendant then on trial. . . . To the greatest extent possible all factual [material] must pass through the judicial sieve, where the fundamental guarantees of procedural law protect the rights of those accused of crime." *United States v. McKinney*, 429 F.2d 1019, 1022–23 (5th Cir. 1970), *cert. denied*, 401 U.S. 922 (1970) (emphasis in original).

[8] Mueller, *Jurors Impeachment of Verdict and Indictments in Federal Court Under Rule 606(b)*, 57 Neb. L. Rev. 920, 944, 945, n. 101, 102 (1978); *United States v. Howard*, 506 F.2d 865 (5th Cir. 1975).

reached its verdict, "Oh come on, this guy has a history of drunk driving. Everyone knows that." McCain testified that several of the jurors "jumped at" Turk for making the remark.

Juror Koskubar denied making the statement, and juror Turk was apparently ill and unable to testify.

Juror Thiesen testified that after dinner and resumption of deliberations, when all jurors were present, a woman mentioned that the defendant "had prior records . . . related to alcohol." Five other members of the jury acknowledged having heard a comment or comments relating to defendant's alleged record of drinking and driving. All these jurors stated that the jury thoroughly discussed the evidence before reaching a verdict.

One juror thought that she was told after the verdict that the defendant had been arrested previously for drinking and driving.

Two jurors testified that they had not heard anything about the defendant's driving record.

The jurors were testifying about information some jurors had furnished the others. This information related to specific facts not of record concerning the defendant and the crime charged. The information which the jurors received was not the "general knowledge" or "the jury wisdom" we expect jurors to bring to their task. The jurors were not testifying about their thought processes or deliberations. It is clear that the jurors were testifying about extraneous information within the meaning of sec. 906.06(2).

It is also apparent that the extraneous information was improperly brought to the attention of the jurors. In numerous cases courts have recognized that where a juror brings extraneous information not on the record

to the attention of other jurors, such information may be improperly before the jury.[9] Courts have not limited sec. 906.06(2) to extraneous information brought to the jurors' attention from sources outside the jury, such as a court official or a newspaper article.[10]

It is also apparent that the extraneous information was prejudicial as that term is used in sec. 906.06(2). The juror's comments relate to facts about the defendant and the crime charged and are in the nature of evidence developed against the defendant which was not admitted at the trial and which the defendant did not have an opportunity to probe and rebut. The circuit court should have ruled for purposes of determining competency of the juror's testimony under sec. 906.06(2) that the information was germane to the jury's decision making and was prejudicial to the defendant.

We therefore conclude that the jurors were competent to testify under sec. 906.06(2) and that their testimony is admissible.

## II.

The second issue, applying the *After Hours* analysis to determine whether to overturn the verdict, is the sufficiency of the evidence, namely, whether the testimony of the jurors demonstrates that error occurred, that is,

[9] See, *e.g., After Hours Welding, supra; Government of Virgin Islands v. Gereau,* 523 F.2d 140, 151 (3d Cir. 1975), *cert. denied,* 424 U.S. 917 (1976); *United States v. Howard,* 506 F.2d 865 (5th Cir. 1975); *United States v. Blair,* 444 F. Supp. 1273, 1275–76 (D.D.C. 1978); *United States ex rel. Owen v. McMann,* 435 F.2d 813, 817 (2d Cir. 1970), *cert. denied,* 402 U.S. 906 (1971); *Farese v. United States,* 428 F.2d 178 (5th Cir. 1970).

[10] See, *e.g., Parker v. Gladden,* 385 U.S. 363 (1966); *Remmer v. United States,* 347 U.S. 227 (1954).

"whether the evidence shows substantial grounds sufficient to set aside a verdict, as a matter of law." *After Hours,* 108 Wis. 2d at 740. In other words, the circuit court must determine whether it is convinced by clear and satisfactory evidence that the alleged extraneous information reached the jury and could bias the jury against the moving party. *After Hours,* 108 Wis. 2d at 740, 742.

The circuit court in this case "found" that it was "somewhat questionable whether alleged statements made by jurors as to prior traffic offenses of the defendant were actually made during jury deliberations." Both parties have, however, taken the position here and at the court of appeals that this "finding" cannot be sustained on review. Eight jurors testified they heard a fellow juror comment about the defendant's driving or drinking record, matters not in the record. We conclude, as both parties urge, that there is clear and satisfactory evidence that some time prior to the verdict and probably during deliberations at least one juror commented to another about the defendant's history of drinking and driving.

The circuit court in this case should have assessed, as a matter of law, whether these statements could bias the jury against the moving party. Because jurors are incompetent to testify with respect to their mental deliberations, direct evidence with respect to the effect of bias, prejudice, or other misconduct will seldom be admissible. Thus, the prejudice to the moving party "will usually be a question of law [and the circuit court's determination] . . . is not accorded deferential review by this court." *After Hours,* 108 Wis. 2d at 741.

The juror's testimony shows that the jury had information outside the record which directly concerned the defendant and other acts of the defendant which are

directly related to the crime charged. The comments were in the nature of evidence concerning other acts. Even if such evidence has a basis in fact (which the allegations in this case lacked), such evidence is not generally admissible as evidence. Sec. 904.04(2), Stats. 1981–82. It is thought that other acts evidence will distract the jury, subtly encourage jurors to infer that the defendant has a propensity to commit such wrongs, and invite punishment of the defendant because he is, for reasons other than the offense charged, a bad person. *State v. Rutchik,* 116 Wis. 2d 61, 341 N.W.2d 639 (1984). Under these circumstances we conclude as a matter of law, *After Hours,* 108 Wis. 2d at 741, that the extraneous information could bias the jury against the moving party and was error. Indeed the state does not dispute that the comments constituted error as a matter of law. Instead the state focuses its argument on the standard which should be applied by the circuit court and this court to assess this error for purposes of determining whether the conviction should be reversed.

Accordingly we conclude that the evidence is sufficient for the circuit court to have concluded that these comments constituted error, and thus a harmless error test must be applied.[11]

### III.

The only issue in dispute between the parties is the standard the circuit court and this court should use to assess whether reversal of a conviction is warranted when extraneous prejudicial information was erroneously brought to the jury's attention.

[11] There are some errors that involve "constitutional rights so basic to a fair trial that their infraction can never be treated as harmless error." *Chapman v. California,* 386 U.S. 18, 23 (1967); *Payne v. Arkansas,* 356 U.S. 560 (1958); *Tumey v. Ohio,* 273 U.S. 510 (1927).

The state urges us to adopt the harmless error standard we set forth in *After Hours, supra,* 108 Wis. 2d at 741, a civil case involving extraneous prejudicial information improperly brought to the jury's attention. In *After Hours* we said that the judgment will not be reversed unless the moving party shows that the extraneous prejudicial information improperly brought to the jury's attention had a "probable effect upon a hypothetical average jury." The state interprets *After Hours* as requiring the decision on prejudice to be based on reasonable probabilities. The defendant urges us to apply the *Chapman* test, see pp. 11–12, and hold that a conviction will be reversed if there is a reasonable possibility that the error had a prejudicial effect upon a hypothetical average jury.

Although we see the advantage of having a single standard for all cases, we conclude that the *After Hours* "probable effect," reasonable probabilities standard cannot be applied in this criminal case. We hold that the *Chapman* test of reasonable possibility is to be applied.

When a jury considers facts in a criminal case which have not been introduced as evidence, the defendant has been deprived of the opportunity to be present when evidence is being presented, to be represented by counsel at an evidentiary proceeding during trial, to cross-examine the "witnesses" who presented the evidence, to offer evidence in rebuttal, to request curative instructions, or to take other tactical steps, including argument to the jury, to place the evidence in perspective for the jury. The error in this case implicates the defendant's federal and state constitutional rights to be present at trial and to have the assistance of counsel with confrontation and cross-examination.

The extraneous information in this case implicates three constitutional doctrines: criminal defendants' right

to trial by an impartial jury, their right to be present during the proceedings, and their right to be represented by an attorney. U.S. Const. amend. VI; Wis. Const. art. IV, secs, 5, 7, 8. These doctrines are linked in this case because "the adversary process ceases to work effectively when neither the defendant nor his attorney is informed of an event that may significantly affect the ability of a member of the jury impartially to weigh the evidence presented to him." *Rushen v. Spain*, —— U.S. ——, 104 S. Ct. 453, 466 (1983) (Marshall, J., dissenting). The sixth amendment requires that evidence be subject to judicial control and the rules of evidence and that counsel have an opportunity to cross-examine the state's witnesses. *Turner v. Louisiana*, 379 U.S. 466, 472–73 (1965). *See also Remmer v. United States*, 347 U.S. 227, 229 (1954); *Parker v. Gladden*, 385 U.S. 363 (1966).

Because federal constitutional rights are implicated, numerous cases have classified error similar to the one in this case as constitutional error.[12] Although the error in this case is of constitutional dimension, reversal is not mandated unless the error is prejudicial.

The standard for assessing the effect of an error involving extraneous prejudicial information being brought improperly to the jury's attention has been phrased in a variety of ways by federal courts which have considered the question under Federal Rule of Evidence 606(b).

---

[12] *See, e.g., Turner v. Louisiana*, 379 U.S. 466, 472–73, (1965); *United States v. Bagnariol*, 665 F.2d 877, 887 (9th Cir. 1981); *United States v. Bruscino*, 662 F.2d 450, 457–58 (7th Cir. 1981); *Gibson v. Clanon*, 633 F.2d 851, 853–54 (9th Cir. 1980); *United States v. Thomas*, 463 F.2d 1061 (7th Cir. 1972). *See also Government of Virgin Islands v. Gereau*, 523 F.2d 140, 150–51 (3d Cir. 1975), *cert. denied* 424 U.S. 917 (1976).

For a discussion of the violation of the right of confrontation, see III ABA Standards for Criminal Justice, Standard 15–4.7(c), pp. 15–160—15–162 (2d ed. 1980).

The tenth circuit and the D.C. circuit apparently take the view that if there is the "slightest possibility" that harm could result, then reversal is required.[13]

The second circuit has apparently used at least two standards: reversal is required if there is a "reasonable probability" that the error affected the verdict[14] or if there is the "slightest possibility" that the error affected the verdict.[15] The "reasonable probability" test is clearly a minority rule and perhaps is not even consistently applied in the second circuit.

Other circuits have phrased the standard in terms of "reasonable possibility."[16]

---

[13] *See, e.g., United States v. Marx,* 485 F.2d 1179, 1184 (10th Cir. 1973), *cert. denied,* 416 U.S. 986 (1974), *United States v. Greer,* 620 F.2d 1383, 1385 (10th Cir. 1980) (explanation of sentencing eligibility by U.S. marshal presumptively prejudicial); *Dallago v. United States,* 427 F.2d 546, 560 (D.C. Cir. 1969).

[14] *See, e.g., United States v. Crosby,* 294 F.2d 928, 950 (2d Cir. 1961); *United States ex rel. Owens v. McMann,* 435 F.2d 813, 818, n. 5 (significant possibility), 820 (probable effect) (2d Cir. 1970).

[15] *See, e.g., United States v. Adams,* 385 F.2d 548, 550–51 (2d Cir. 1967).

[16] *See, e.g., United States v. Howard,* 506 F.2d 865 (5th Cir. 1975); *Paz v. United States,* 462 F.2d 740, 745 (5th Cir. 1972); *Farese v. United States,* 428 F.2d 178, 181 (5th Cir. 1970); *United States v. Bruscino,* 662 F.2d 450, 457 (7th Cir. 1981); *United States v. Thomas,* 463 F.2d 1061, 1063 (7th Cir. 1972); *United States v. Bagnariol,* 665 F.2d 877 (9th Cir. 1981); *Gibson v. Clanon,* 633 F.2d 851 (9th Cir. 1981); *United States v. Vasquez,* 597 F.2d 192, 193 (9th Cir. 1979).

The state distinguishes the federal cases adopting the "reasonable possibility test" by asserting that they, unlike this case, involved extraneous prejudicial information being brought to the jury by a source outside the jury, like a bailiff. We are not persuaded by this argument. First, several federal cases involve a juror bringing extraneous information to fellow jurors. See, *e.g., United States v. Howard,* 506 F.2d 865, 866 (5th Cir. 1975). Second, the source of the information is not necessarily determinative of the potential prejudicial effect of the informa-

The "reasonable possibility test" is equivalent to the "beyond a reasonable doubt" standard formulated in *Chapman v. California*, 386 U.S. 18 (1967), *reh'g denied*, 386 U.S. 987,[17] and applied by this court in criminal cases involving federal constitutional error. *State v. Billings*, 110 Wis. 2d 661, 665, 666, 329 N.W.2d 192 (1983). The basis for this standard was summarized in *Farese v. United States*, 428 F.2d 178, 179–80 (5th Cir. 1970), as follows:

tion. The nature of the information is as important or more important in determining prejudice than the source. *See, e.g., United States ex rel. Owen v. McMann*, 435 F.2d 813, 816, 820 (2d Cir. 1970), *cert. denied*, 402 U.S. 906 (1971).

Some courts talk in terms of a presumption of prejudice where extraneous prejudicial information is improperly brought before the jury and a burden on the government to prove harmlessness. *See, e.g., United States v. Castello*, 526 F. Supp. 847 (W.D. Tex. 1981); *United States v. Bassler*, 651 F.2d 600, 603 (8th Cir. 1981), *cert. denied sub nom. Sprecher v. United States*, 454 U.S. 944, 102 S. Ct. 485 (1981), *cert. denied*, 454 U.S. 1151 (1982); *United States v. Sublet*, 644 F.2d 737, 740 (8th Cir. 1981). Others view the concept of presumption as not appropriate in these cases. *See, e.g., Government of Virgin Islands v. Gereau*, 523 F.2d 140, 154 (3d Cir. 1975), *cert. denied* 424 U.S. 917 (1976). *See also* Saltzburg, *The Harm of Harmless Error*, 59 Va. L. Rev 988, 1002–1010 (1973); Traynor, *The Riddle of Harmless Error*, 25–26 (1970).

[17] The United States Supreme Court noted in *Chapman:* "There is little, if any, difference between . . . 'whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction' and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." 386 U.S. at 24.

For an interesting empirical study of judicial and lay assessments of the prejudicial impact of various kinds of evidence, *see* Teitelbaum, Sutton-Barbere, and Johnson, *Evaluating the Prejudicial Effect of Evidence: Can Judges Identify the Impact of Improper Evidence on Juries?*, 1983 Wis. L. Rev. 1147.

"It is a fundamental principle that the government has the burden of establishing guilt solely on the basis of evidence produced in the courtroom and under circumstances assuring the accused all the safeguards of a fair trial.

". . . Judicial control of the juror[s'] knowledge of the case pursuant to the laws of evidence is fundamental to the prevention of bias and prejudice. Our rules of evidence are designed to exclude from consideration by the jurors those facts and objects which may tend to prejudice or confuse. Evidence presented under the exclusionary rules is subject to cross-examination and rebuttal. It is therefore necessary that all evidence developed against an accused 'come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.' *Turner v. Louisiana*, 1965, 379 U.S. 466, 472–73, 85 S. Ct. 546, 550, 13 L. Ed. 2d 424."

Under the *Chapman* test the beneficiary of the constitutional error, in this case the state, must ". . . prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained . . . and the court must be able to declare a belief that [the constitutional error] was harmless beyond a reasonable doubt." *Id.* at 24. The court determines whether the error is harmless by assessing the impact of the erroneously admitted evidence on the minds of an average jury, *Harrington v. California*, 395 U.S. 250, 254 (1969), that is, by assessing whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction. *Fahy v. Connecticut*, 375 U.S. 85, 86–87 (1963).[18]

---

[18] Some commentators have concluded that the harmless error rule is of different dimensions in criminal and civil cases because of the different burdens of proof in the two types of cases. They stress that in reviewing the jury verdict the appellate court must be careful not to usurp the jury's function. The lower the burden of proof, the larger margin of error allowed

Although the "reasonable possibility" *Chapman* standard is easy to state, it is not easy to apply. *State v. Billings,* 110 Wis. 2d 661, 668, 329 N.W.2d 192 (1983). This court has posited guidelines for assessing the impact of certain kinds of errors on the jury. See *Reichhoff v. State,* 76 Wis. 2d 375, 381, 251 N.W.2d 470 (1977) (prosecutorial comment on defendant's invocation of right to silence) ; *State v. Billings,* 110 Wis. 2d 661, 669, 329 N.W.2d 192 (1983) (admission into evidence of defendant's out-of-court incriminating statement; cumulative evidence). In this case where extraneous prejudicial information improperly brought to the jury's attention is the error complained of, we conclude that trial and appellate courts should be guided in evaluating the impact of the error by considering such factors as the nature of the extraneous information and the circumstances under which it was brought to the jury's attention; the nature of the state's case; the defense presented at trial; and the connection between the extraneous information and a material issue in the case. Based on a consideration of these factors, we conclude that in this case the error was not harmless beyond a reasonable doubt.

the jury. The higher the burden of proof, the less margin of error allowed the jury. They argue that if the preponderance standard is used at trial, a similar test should be used for judging error on appeal, namely, the court should reverse only if it is reasonably probable that the error affected the decision. If a greater degree of certainty is required at trial, as it is in a criminal case, the standard on appeal for assessing error should be correspondingly stringent: The appellate court should reverse the criminal conviction unless it is clear beyond a reasonable doubt that errors did not contribute to the guilty verdict. *See* Wright and Burger, *Weinstein's Evidence* par. 103[06], p. 103–56 (1982); Saltzburg, *The Harm of Harmless Error,* 59 Va. L. Rev. 98 8(1973). *See also Haddad v. Lockheed Calif. Corp.,* 720 F.2d 1454 (9th Cir. 1983); *People v. Crimmins,* 36 N.Y. 230, 326 N.E.2d 787, 796 (1975) (Cooke, J., dissenting).

The nature of the extraneous information was alleged other wrongs or acts of the defendant, and there is thus a direct connection between the extraneous information and the material issues in this case. The extraneous information has no factual basis in the record. The general rule is that evidence of other wrongs is not admissible as evidence. See *supra,* p. 8. Other acts evidence raises "a definite risk that the jury might convict to punish a person they perceive to be a generally bad actor where automobiles are concerned." *Hart v. State,* 75 Wis. 2d 371, 394, 249 N.W.2d 810 (1977).

The extraneous information was furnished to the jurors at a critical point in the course of the trial—probably during deliberations and within an hour or so before a verdict was reached.

Furthermore, the other wrongs alleged were similar or related to the offense charged in this case, and the information about the defendant's history of drinking and driving may have been viewed by the jury as probative of intoxication and causation, the disputed issues in this case.

The state's case against the defendant on the issue of intoxication was based on the results of a blood alcohol test taken a few hours after the accident. The percentage of blood alcohol in his blood by weight was measured at .333 percent. The defense presented at trial was an attack on the reliability of the blood test results.

On the issue of causal negligence, the state's principal evidence against the defendant was provided by a witness who had observed the night-time collision between the defendant's vehicle and the second vehicle in his rear-view mirror. The witness testified that the collision took place in the second vehicle's lane of travel. In addition, an officer who observed the scene of the accident testified as to his expert opinion (based on an analysis of gauge marks, tire marks, concentrations of debris and

fluid trails) that the defendant's automobile had passed over the center line, causing the collision with the second vehicle in the latter's lane of travel.

The defense presented at trial was an attack on the credibility of the eyewitness by emphasizing that the accident had taken place in the dark at 8:50 p.m. and that the witness had observed the accident through a rearview mirror, seeing only the headlights of the vehicle behind him and then "sparks flying." The defendant also offered evidence that a gauge mark traceable to the second vehicle had been found close to the center line, creating an inference that the second vehicle may have been responsible for the collision. Furthermore, the defendant offered evidence that the driver of the second vehicle had a blood alcohol level of .161 percent by weight at the time of the accident; the jury could have inferred from this evidence that the victim caused the collision.

Although the evidence in this case was sufficient to support a conviction, the state's case, especially on causation, did have weaknesses. If hypothetical average jurors inferred from the extraneous information—as they were apt to do—that the defendant was prone to drinking and negligent driving, this information significantly bolstered the state's case on both material issues in dispute.

Applying the analysis set forth herein and the *Chapman* standard, we conclude that we cannot declare that there was no reasonable possibility that the extraneous prejudicial information which was improperly brought to the jury's attention might have contributed to the conviction or that the state has demonstrated beyond a reasonable doubt that this information did not contribute to the verdict. We cannot express a belief that the constitutional error was harmless beyond a reasonable doubt. The state had a strong case against the defendant, but the extraneous prejudicial information

which was improperly brought to the jury's attention in this case was of such a nature that we conclude, as did the court of appeals, that there is a reasonable possibility that the extraneous information might have affected the verdict. Accordingly we affirm the court of appeals and remand for a new trial.

*By the Court.*—Decision of the court of appeals affirmed.

STEINMETZ, J. (concurring). I agree with the result in this case but differ in applying a test of "reasonable possibility that the error had a prejudicial effect upon a hypothetical average juror" (*supra* at 525) rather than the test stated in *After Hour Welding v. Laneil Management Co.*, 108 Wis. 2d 734, 741, 324 N.W.2d 686 (1982), of "probable effect upon a hypothetical average jury." My initial objection is that I do not believe there is any distinction between the two tests. It may be that a reasonable possibility rises to the quality of a probability. It is, however, an unnecessary distinction to make since the trial judge will decide whether there was a reasonable possibility or a probability and no miscroscopic aid can assist the judge in making a distinction. Trial judges for years have said in regard to questions containing the word "possibility" that anything is possible. But now this test speaks of a "reasonable possibility" which is most likely the same as a probability. I would have felt more comfortable for trial judges if the majority had stated the difference in the tests, if there is one, so the judges can recognize it when they see it. Not only does the majority change the test, but it places the burden on the state. I would leave the burden on the party challenging the verdict.

There is no need to have one test for civil cases, *After Hour,* and one test for criminal cases, such as this one. The majority's analysis of *Chapman,* dealing with ex-

clusionary evidence and the harmless error test of beyond a reasonable doubt and effect, adopts a similar test for nonevidence of extraneous matters coming to the jury's attention. This is an unnecessary intellectual exercise and one that only confuses rather than assists in solving the problem at the trial court level.

To keep the problem of extraneous factor effects on verdicts from expanding or occurring, there are several things trial courts can do.

First, by recording the voir dire, which is not now required, proper questions regarding prospective jurors' knowledge of the case, facts and the parties will be recorded. In *After Hour* there was no recording of the voir dire, and, therefore, this court and the trial court had to rely on an arguable reconstruction of it through the attorneys' memories which differed. In this case, since there was no recording of the voir dire, any analysis of whether the defendant may have waived the harmful effects of the extraneous matters was foreclosed. A recorded voir dire may or may not have shown substantial grounds sufficient to set aside a verdict as a matter of law, which is the second issue of *After Hour*.

On voir dire, the attorneys or judge should develop any knowledge the jurors have obtained from outside the courtroom as to the case, its facts, the parties, the witnesses, and the participants in total, including the judge, so later extraneous information can be labeled as a violation of the oath taken by jurors[1] and reported by

---

[1] Sec. 805.08(1), Stats., provides:

"**805.08 Jurors.** (1) QUALIFICATION, EXAMINATION. The court shall examine on oath each person who is called as a juror to discover whether the juror is related by blood or marriage to any party or to any attorney appearing in the case, or has any financial interest in the case, or has expressed or formed any opinion, or is aware of any bias or prejudice in the case. If a juror is not indifferent in the case, the juror shall be excused. Any party objecting for cause to a juror may introduce evidence

other jurors immediately to the judge before the verdict is reached.

Secondly, the judge during preliminary instructions to the prospective jurors before the commencement of the voir dire can state that if during service as jurors in the case being considered, if anyone, including other jurors, brings any extraneous (outside) information to the jury's attention, that should be reported to the judge. Also, the judge may wish to tell the jury that during the trial they may consider only the evidence received, the instructions of the judge and the knowledge the jurors bring with them from the every day affairs of life. However, if they have any knowledge at the voir dire of the case, facts or parties that should be disclosed during the questioning.

As was recently held by the United States Supreme Court in *McDonough Power Equipment, Inc. v. Greenwood,* No. 82–958, filed January 18, 1984:

"The ruling of the Court of Appeals in this case must be assessed against this background. One touchstone of a fair trial is an impartial trier of fact—'a jury capable and willing to decide the case solely on the evidence before it.' *Smith v. Phillips,* 455 U.S. 209, 217 (1982). *Voir dire* examination serves to protect that right by exposing possible biases, both known and unknown, on the part of potential jurors. Demonstrated bias in the responses to questions on *voir dire* may result in a juror being excused for cause; hints of bias not sufficient to warrant challenge for cause may assist parties in exercising their peremptory challenges. The necessity of truthful answers by prospective jurors if this process is to serve its purpose is obvious." *McDonough.* Slip opinion at 6.

in support of the objection. This section shall not be construed as abridging in any manner the right of either party to supplement the court's examination of any person as to qualifications, but such examination shall not be repetitious or based upon hypothetical questions."

As was said in *After Hour*, 108 Wis. 2d at 737–38, "While the rule against impeachment of a jury verdict is strong and necessary, it is not written in stone nor is it a door incapable of being opened. It competes with the desire and duty of the judicial system to avoid injustice and to redress the grievances of private litigants." The balancing of these attitudes of the judicial system of finality and certainty of result with fairness, must begin at the voir dire and preliminary instructions so that a record will show the near impossibility of extraneous matters coming to jurors' attention or that they reach the level of substantial grounds sufficient to set aside the verdict as a matter of law. *After Hour*.

I would also affirm the court of appeals but with the reasoning stated in this concurring opinion.

LOUIS J. CECI, J. (concurring). I concur in the opinion of the court.

The trial courts of this state are overburdened to a degree that requires no documentation by this writer. In a valiant attempt to expedite the matters before them, the trial courts have permitted the recording of *voir dire* and closing arguments to be solely the option of trial counsel. This, of course, permits the court's stenographic reporter to catch up on matters that may be pending, but it puts the trial judge in an unenviable position. Appellate courts cannot review that which is not submitted. We do not have a transcript of the *voir dire* before us; thus, we render our opinion without the benefit of knowing what questions were asked by counsel and what the responses to those questions were by the jurors in this case.

I would *require* all trial courts of this state to record the entire *voir dire* and closing arguments. This would, in my view, protect the integrity of the trial process.