**STATE of North Dakota, Plaintiff and Appellee,**

v.

**Robert ABELL, Defendant and Appellant.**

**Cr. No. 1134.**

Supreme Court of North Dakota.

March 19, 1986.

Patricia L. Burke, Asst. State's Atty., Bismarck, for plaintiff and appellee.

Bickle, Coles & Snyder, Bismarck, for defendant and appellant; argued by Robert J. Snyder.

GIERKE, Justice.

Robert Abell appeals from his judgment of conviction for the offense of gross sexual imposition in violation of Section 12.1–20–03(2)(b), N.D.C.C. We reverse and remand for a new trial.

Abell was charged with engaging in sexual contact with a twelve-year-old girl through the use of force.[1] Abell was a friend of the victim's mother, and at the time of the alleged incident was residing with her and the victim in their trailer home in Bismarck. Abell does not dispute that sexual contact—fondling of the girl's breasts and genitals—did occur, but his defense to the charge is that he did not accomplish the sexual contact through the use of force.

The only element of the offense at issue in the jury trial was whether Abell used force. The trial court instructed the jury that he would not define the word "force" because it is a word in common usage which has no specialized meaning in law. The court instructed the jury to give that term "the meaning you would normally give it in the context that you are considering it." During deliberations, the jury foreman requested and received a dictionary from the bailiff. The court learned of this incident prior to the jury's return of a verdict and had the dictionary removed from the jury room but did not speak to the jurors about the matter until after the jury returned with its verdict finding Abell guilty of gross sexual imposition.[2] At that time, the court questioned the jurors about the dictionary and determined that they had used it to ascertain the meaning of the word "force." Abell then moved for a mistrial which was denied by the trial court.

1. The information charged Abell with engaging in sexual contact "by force or threat." However, during the trial the parties agreed to delete "threat" from the charge.

2. The trial court, after learning of the jury misconduct, could have conducted a voir dire examination of the jury prior to its return of a verdict and carefully instructed the jurors to decide the case only on the evidence presented

The sole issue on appeal is whether or not the trial court erred in denying Abell's motion for a mistrial based upon the jury's improper use of the dictionary during its deliberations.

The jury is to consider nothing in the jury room during its deliberations other than items admitted as evidence at the trial and the jurors' own notes. Section 28–14–17, N.D.C.C. However, the presence of unauthorized terms in the jury room does not automatically require reversal or a new trial. *See Demaray v. Ridl,* 249 N.W.2d 219 (N.D.1976). Once the court has determined that improper extraneous information has reached the jury the court must determine "if there is a reasonable possibility that the extrinsic material could have affected the verdict," considering the possible prejudicial effect on a hypothetical average jury. *Keyes v. Amundson,* 343 N.W.2d 78, 85–86 (N.D.1983). The trial court has wide discretion in determining whether or not to grant a new trial on the basis of jury misconduct and its determination will not be set aside on appeal unless it has abused its discretion. *Keyes v. Amundson, supra; Basin Electric Power Co-op. v. Paulson,* 289 N.W.2d 548 (N.D. 1980); *Demaray v. Ridl, supra.*

In this case, the parties agree that the unauthorized use of the dictionary by the jury constituted jury misconduct. Abell contends that he is therefore entitled to a new trial unless the state proves that the misconduct was not prejudicial. The state assumes the contrary position that Abell is not entitled to a new trial unless he proves that the jury misconduct was prejudicial to him. There is conflicting authority on this issue.

Some jurisdictions have concluded that jury misconduct does not warrant a new trial unless the defendant demonstrates prejudice, whereas other jurisdictions have concluded that a new trial must be granted unless the prosecution demonstrates that the misconduct did not prejudice the defendant. *See* Annot., *Prejudicial Effect Of Jury's Procurement Or Use Of Book During Deliberations In Criminal Cases,* 35 A.L.R.4th 626 (1985).

We believe the better rule, and the one we follow today, is that the prosecution must demonstrate that there is not a reasonable possibility that the jury misconduct could have affected the verdict to the defendant's prejudice. *See Basin, supra* (prevailing party has burden to prove misconduct not prejudicial). This rule is consistent with the basic premise that a defendant is entitled to a fair and impartial trial and with the prosecution's burden to affirmatively prove every element of the crime charged.

We believe that *State v. Bergeron,* 340 N.W.2d 51 (N.D.1983), is distinguishable. In *Bergeron, supra,* we concluded that when the trial court fails to sequester the jury as required by statute the defendant is not entitled to a new trial unless he is able to demonstrate the occurrence of prejudicial conduct. However, unlike this case where the parties concede that the jury acted improperly in considering nonevidentiary information during its deliberations, the court's failure to sequester the jury in *Bergeron, supra,* did not, in itself, constitute jury misconduct. Thus, to receive a new trial the defendant in *Bergeron, supra,* was required to demonstrate the occurrence of some prejudicial juror misconduct. Since the parties conceded the occurrence of juror misconduct in this case, it is unnecessary for the defendant to prove misconduct.

The dictionary used by the jury contained eleven separate definitions of "force" including the following descriptive terms:

"exertion ... intellectual power or vigor ... a capacity for affecting the mind or behavior ... to produce by effort ... to move (something) against resistance ... to rape ... to place undue strain upon."

Some of the dictionary definitions of "force" may have been part of the common usage of that term in the collective mind of the jury; others may have not. A number

during trial. The procedure could have perhaps ameliorated the potential prejudice of the extraneous information. *See Keyes, supra; State v. Cox,* 322 N.W.2d 555 (Minn.1982).

of the dictionary descriptions could be intelligibly substituted for the term "force" in the statute under which Abell was charged; but each would shade or alter the statute's meaning so as to possibly affect the result in applying the statute to the facts of the case. Thus, we conclude that there is a reasonable possibility that the jury's use of the dictionary could have affected the verdict. We further conclude, therefore, that the trial court abused its discretion in denying Abell's request for a mistrial. Accordingly, we reverse the judgment and remand for a new trial.

ERICKSTAD, C.J., and MESCHKE, LEVINE and VANDE WALLE, JJ., concur.