STATE of North Dakota, Plaintiff and Appellee,

v.

Terry Darnell BROOKS, Defendant and Appellant.

Cr. No. 930286.

Supreme Court of North Dakota.

Aug. 24, 1994.

 

Stephen R. Dawson, Asst. State's Atty. (argued), Fargo, for plaintiff and appellee.

Bruce D. Johnson (argued), Fargo, for defendant and appellant.

NEUMANN, Justice.

Terry Darnell Brooks appeals from the verdict finding him guilty of the offense of delivery of a controlled substance, and from the order denying his motion for a new trial. We reverse, holding that the trial court erred in not granting Brooks' motion for a new trial on the grounds that jury misconduct during deliberations tainted the verdict with extraneous prejudicial information.

On August 13, 1993, a jury verdict was returned against Brooks, finding him guilty of the offense of delivery of the controlled substance marijuana. Prior to sentencing, Brooks made a motion requesting a new trial on the grounds the "verdict was the product of misconduct on the part of [the presiding juror, an attorney] which caused extraneous, non evidentiary, prejudicial information to be improperly brought before the jury's attention." The trial court denied the motion from the bench, and proceeded to sentence Brooks. Brooks appeals.

Brooks brings two issues on appeal; first, whether extraneous prejudicial information brought up by the presiding juror during deliberations mandates a new trial, and second, whether the contingency fee arrangement between Fargo police and informant Allen Taylor violated public policy. Holding that the statements made by the presiding juror require a new trial, we do not address the merits of the second issue.

Brooks asserts that the trial court abused its discretion in failing to grant his motion for a new trial on the basis of jury misconduct. The State does not contest the admissibility of the juror affidavits or that the statement was actually made by the presiding juror, but instead maintains the trial court's position that the statement was not misconduct and was not prejudicial because it

was a statement concerning a matter of common knowledge.[1] We disagree.

Rule 33 of the North Dakota Rules of Criminal Procedure provides that criminal defendants may move for a new trial on the basis of jury misconduct. "Whether the trial court's discretion was properly exercised depends upon the facts and circumstances of each case." *Keyes v. Amundson*, 391 N.W.2d 602, 604 (N.D.1986) (*Keyes II* ). We will not set aside a trial court's denial of a motion for a new trial unless the trial court abused its discretion in denying the motion. *E.g., State v. Skaro*, 474 N.W.2d 711 (N.D. 1991). An abuse of discretion occurs when a trial court acts arbitrarily, capriciously, or unreasonably. *E.g., Smith v. Anderson*, 451 N.W.2d 108, 112 (N.D.1990).

■ Similar to civil cases, in criminal cases when determining whether to allow a new trial the appropriate questions are whether there was misconduct, and if so, whether it could have affected the verdict of a hypothetical average jury. *See Keyes v. Amundson*, 343 N.W.2d 78, 85 (N.D.1983) (*Keyes I* ) (civil case); *see also Keyes II*, 391 N.W.2d at 604 (civil case restating rule in *Keyes I* ). In this case the trial court determined both that there was no misconduct, and that it would not taint the jury. Denying the motion for a new trial, the trial court stated "she brought into the jury room a matter of ordinary

knowledge and understanding.... It does not rise to the level that would overcome the presumption that the jury acted in performance and duty with the law."

Brooks argues jury misconduct occurred as a result of statements made by the presiding juror, an attorney, during jury deliberations. Brooks submitted affidavits from two of the jurors attesting that during deliberations, the presiding juror made a comment to the other jurors to the effect that Brooks' business partner had been tried for and convicted of a drug related offense.[2] The affidavits were received in evidence and considered by the trial court without objection by the State. Although the rules of evidence restrict juror testimony, Rule 606(b) of the North Dakota Rules of Evidence provides that jurors may testify as to any matter or statement occurring during the course of the jury's deliberations if extraneous prejudicial information was improperly brought to the jury's attention.[3] *See* 27 Wright & Gold, *Federal Practice and Procedure:* Evidence § 6075 at 444–45 (1990) (606(b) "pertains to the jury's consideration of facts or data not revealed in open court").

In this case, the State did not raise Rule 606(b) below or in its brief on appeal, but argues that a statement made by the presiding juror was common knowledge and not

1. Jury instructions included an instruction that read:

"You may, in addition to the evidence offered in this case, take into consideration in connection therewith such matters of common knowledge and science as are known to all persons of ordinary understanding and intelligence. That is, you come into this jury box as reasonable persons of experience and affairs, bringing that knowledge which is common to all persons. You are to weigh this testimony in the light of those matters of common knowledge and science as are known to all persons of ordinary knowledge, understanding, and intelligence."

2. Juror April Herdeg's affidavit stated: "[The presiding juror, an attorney], to the best of my recollection, made the following statement: 'Terry Brooks' partner was convicted of selling drugs a year ago. I don't know if you people know it but it was in the paper.'" Juror Shannon Messner's affidavit stated: "I recall that [the presiding juror, an attorney] stated: 'It is a matter of common knowledge that his business partner was tried for a drug offense.'"

3. Rule 606(b) of the North Dakota Rules of Evidence states:

"(b) *Inquiry into validity of verdict or indictment.* Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon the juror or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. However, a juror may testify on the questions whether extraneous prejudicial information was improperly brought to the jury's attention, whether any outside influence was improperly brought to bear upon any juror, or whether the verdict of the jury was arrived at by chance. Nor may a juror's affidavit or evidence of any statement by the juror concerning a matter about which the juror would be precluded from testifying be received for these purposes."

extraneous information. The purpose of Rule 606(b) is to free deliberation in the jury room by protecting from disclosure the manner in which a verdict was reached, and to promote the finality of the verdict. N.D.R.Ev. Rule 606 explanatory note. "Where a verdict is reached because of extraneous, prejudicial information or outside influence, much of the reason for disallowing a juror to testify disappears, and the balance is weighted in favor of obtaining justice in the individual case." *Id.* "For example, concern for fairness is clearly at its greatest where individuals attempt to influence the jury in a manner that does not permit confrontation by the adversaries." Wright & Gold, *supra,* at § 6075 pp. 456–57.

■ Rule 33 of the North Dakota Rules of Criminal Procedure authorizes a new trial for any harmful juror misconduct. As a rule of evidence, Rule 606(b) does not "purport to specify the substantive grounds for setting aside verdicts for irregularity; it deals only with the competency of jurors to testify concerning those grounds." Fed.R.Evid. 606 advisory committee's note.

"As a practical matter, however, the exclusionary principle [of Rule 606(b) ] imposes what amounts to limits upon the ground of permissible impeachment of jury verdicts. That is the obvious result of a rule which significantly restricts use of the only sure source of information as to occurrences during the jury's deliberations."

3 David W. Louisell & Christopher B. Mueller, *Federal Evidence* § 286 at 118 (1979). The fact that "extraneous prejudicial information was improperly brought before the jury's attention" is not only a proper subject for juror affidavits under Rule 606(b), it is also a form of jury misconduct warranting a new trial under Rule 33. Therefore, although the State may not have objected to the admission of the affidavits, cases applying Rule 606 are relevant to the State's argument that the presiding juror's statement was common knowledge and not "extraneous prejudicial information" constituting juror misconduct.

■ Although we presume the jury's verdict is right, *e.g., Keyes II,* 391 N.W.2d at 605, "introduction of additional outside infor-

mation is beyond permissible bounds," *State v. Johnson,* 445 N.W.2d 337, 342 (Iowa 1989). "The theory of our system is that the conclusions to be reached in a case will be induced only by evidence and argument in open court, and not by any outside influence, whether of private talk or public print." *Patterson v. Colorado,* 205 U.S. 454, 462, 27 S.Ct. 556, 558, 51 L.Ed. 879 (1907).

"When a jury considers facts in a criminal case which have not been introduced as evidence, the defendant has been deprived of the opportunity to be present when evidence is being presented, to be represented by counsel at an evidentiary proceeding during trial, to cross-examine the 'witnesses' who presented the evidence, to offer evidence in rebuttal, to request curative instructions, or to take other tactical steps, including argument to the jury, to place the evidence in perspective for the jury."

*State v. Poh,* 116 Wis.2d 510, 343 N.W.2d 108, 117 (1984) (juror mentioned that defendant had prior criminal record).

■ Because verdicts should be based on evidence presented in open court, and not upon extraneous prejudicial information, jury misconduct may occur when during deliberations jurors consider information or matters outside the evidence admitted during trial. *See Keyes I,* 343 N.W.2d 78 (extraneous prejudicial information reached jury); *see also State ex rel. Trump v. Hott,* 187 W.Va. 749, 421 S.E.2d 500 (1992) (evidence of defendant's prior wrongdoings was extrinsic); *Johnson,* 445 N.W.2d 337 (during deliberations, juror introduced hearsay information not admitted into evidence); *United States v. Howard,* 506 F.2d 865, 867 (5th Cir.1975) ("While the thirteenth century jury may have been selected precisely because of its ready familiarity with background facts, this no longer fits our conception of the jury's role. The modern juror's 'verdict must be based upon the evidence developed at the trial.' ").

■ "Obviously, no juror can or should approach deliberations with an entirely clean cognitive slate. Humans can make intelligent decisions only by drawing upon their accumulated background knowledge and ex-

perience." Wright & Gold, *supra*, at § 6075 p. 450. We expect jurors to bring their experiences and commonly known facts with them. *E.g., Poh*, 343 N.W.2d at 113; *see also Rideau v. Louisiana*, 373 U.S. 723, 733, 83 S.Ct. 1417, 1423, 10 L.Ed.2d 663 (1963) (impossible standard to require jury to be a laboratory, completely sterile and free from any external factors); *People v. Schmidt*, 196 Mich.App. 104, 492 N.W.2d 509, 511 (1992) ("Jurors must determine the facts in the case from the evidence received at trial; they may not decide matters that are not of common knowledge or experience."). The scope of the doctrine is limited to a few matters of elemental experience in human nature, commercial affairs, and everyday life. *E.g., People v. Simon*, 189 Mich.App. 565, 473 N.W.2d 785, 787 (1991) (citing 9 Wigmore, Evidence (Chadbourn rev. 1976), § 2570, p 728); *see also State v. Poellinger*, 153 Wis.2d 493, 451 N.W.2d 752, 758 (1990) ("In weighing the evidence presented at trial, the jury could take into account matters of common knowledge and experience in the affairs of life."). However, *"this [doctrine] does not include communication from one juror to another of objective extrinsic facts regarding the criminal defendant or his alleged crimes." United States v. Howard*, 506 F.2d at 867 (emphasis added).

A common standard for determining the boundaries of permissible jury background information is to distinguish between "general information," and "specific facts." *See, e.g., Hard v. Burlington Northern R.R.*, 812 F.2d 482, 486 (9th Cir.1987). Because this has been described as a vague and unworkable standard, another standard has been used by some courts. These courts balance finality on one hand, and fairness and accuracy on the other hand. Wright & Gold, *supra*, at § 6075 p. 453. Regardless of the standard we apply, the information regarding Brooks' business partner went beyond the bounds of acceptable background knowledge and was extraneous.

Brooks was charged with a drug related offense. The presiding juror informed the jury that Brook's business partner was also charged with a drug offense and ultimately convicted. The criminal history of Brook's

associate was irrelevant to the charge against Brooks and likely would have been excluded from evidence if offered by the State during the trial.

When untested outside information about a criminal case reaches the jury, the interest in preserving the finality of jury verdicts is diminished. On the other hand, the "danger to fair trials is most acute when facts which have not been tested by the trial process have been intentionally communicated directly to the jurors." *United States v. Howard*, 506 F.2d at 866. Balancing finality and fairness in this case, the untested information shared by the presiding juror was extraneous.

Unlike the alleged agreement to disregard the trial court's instructions in *Andrews v. O'Hearn*, 387 N.W.2d 716 (N.D.1986), the receipt of extraneous information does not "inhere in the verdict." *United States v. Howard*, 506 F.2d at 868–69 n. 3. In *Howard*, one of the jurors informed the others "that the defendant had been in trouble two or three times." 506 F.2d at 866. The Fifth Circuit held that this character evidence was extraneous and not common knowledge.

In *State ex rel. Owen v. McCann*, 435 F.2d 813, 815 (2nd Cir.1970), several of the jurors "knew all about" the defendant's reputation as a troublemaker. The Second Circuit affirmed the order for new trial, saying that "[t]here is no rational distinction between the potentially prejudicial effect of extra-record information which a juror enunciates on the basis of the printed word and that which comes from his brain." *Id.* at 820; *see also Hard v. Burlington Northern R.R.*, 812 F.2d at 486 (when juror's past personal "experiences are related to the litigation ... they constitute extraneous evidence which may be used to impeach the jury's verdict").

In another similar federal case, a new trial was required when at least two of the jurors learned during deliberations that the defendant's business associate and former co-defendant had already been convicted of a similar scheme to defraud the government. *United States v. Posner*, 644 F.Supp. 885 (S.D.Fla.1986). In this case, not only was the information about Brooks' associate specific to the case the jurors were deciding, but

it would have been difficult for the jurors to evaluate the reliability and relevancy of the information.

Having determined that the information was extraneous, the next step is to determine whether it was prejudicial. If a losing party establishes jury misconduct, the burden of proof shifts to the prevailing party to show that the losing party could not have been prejudiced by the misconduct. *State v. Abell*, 383 N.W.2d 810, 812 (N.D.1986). The standard we have adopted is for trial courts to determine whether the verdict of a hypothetical average jury would be affected by the jury misconduct. *Keyes I*, 343 N.W.2d at 85. It has been stated that the .

> "probable effect is estimated in light of the importance of the issue to which the information or influence related, the nature of the information or influence, the strength of the admitted evidence supporting the verdict, the number of jurors exposed to the information or influence, when the jury was exposed to the information or influence, how long the jury discussed these matters during deliberations, the manner in which the court dealt with the information at trial, and any other matters which logically might have a bearing on the effect of the information or influence on the jury."

Wright & Gold, *supra*, at § 6075 pp. 469–71 (footnotes omitted).

Normally, we would remand the case to the trial court to determine whether the government can rebut the presumption that jury misconduct prejudiced the defendant. However, as in *United States v. Perkins*, 748 F.2d 1519, 1534 (11th Cir.1984), a remand is unnecessary here because the information presented by the government, viewed in its most favorable light, was not sufficient to remove all reasonable possibility that the verdict of a hypothetical average criminal jury would have been unaffected by the extraneous information in this case. *See also Abell*, 383 N.W.2d at 812–813; *Keyes I*, 343 N.W.2d at 86. Entrapment [4] was the essence of Brooks' defense against the charges of delivery of a controlled substance. North Dakota applies an objective test for entrapment. *E.g., State v. Nehring*, 509 N.W.2d 42, 44 (N.D.1993). "Under the objective test, the focus is on the conduct of law enforcement officials and the effect it would have on the normally law-abiding citizen. Predisposition of the accused to commit the crime is irrelevant." *State v. Kummer*, 481 N.W.2d 437, 441 (N.D. 1992) (citations omitted).

In order to establish entrapment, Brooks was required to prove two elements: (1) that law enforcement agents induced the commission of the crime, and (2) that such inducement was likely to cause a normally law-abiding person to commit the crime. *E.g., Nehring*, 509 N.W.2d at 44. Because the issue of predisposition is irrelevant under the objective test, prejudicial evidence concerning Brooks' background to establish predisposition would not be admissible in court. *State v. Mees*, 272 N.W.2d 284, 289 (N.D. 1978). The presiding juror's statement related to Brooks' predisposition to sell marijuana to the extent that it suggested "guilt by association." Any prejudicial effect this statement might have on a hypothetical jury's verdict would surely be exacerbated by the facts that not only was the statement made by the presiding juror, but that the presiding juror was a practicing attorney. We are not suggesting that attorneys are unable to participate as jurors; however, the fact that the presiding juror was an attorney is a relevant factor to be considered in our

---

**4.** The defense of entrapment is set out in NDCC § 12.1–05–11. The version of this statute in effect at the time of Brooks' arrest provides:

> "*12.1–05–11. Entrapment.*
> "1. It is an affirmative defense that the defendant was entrapped into committing the offense.
> "2. Entrapment occurs when a law enforcement agent induces the commission of an offense, using persuasion or other means likely to cause normally law-abiding persons to commit the offense. Conduct merely af-

fording a person an opportunity to commit an offense does not constitute entrapment.
> "3. In this section 'law enforcement agent' includes personnel of federal and local law enforcement agencies as well as state agencies, and any person cooperating with such an agency."

NDCC § 12.1–05–11. The legislature amended this statute in 1993. The amended version became effective on August 1, 1993. *See* N.D. Const. art. IV, § 13.

analysis. We therefore hold there is a reasonable possibility that the presiding juror's statement could have affected the verdict of a hypothetical average jury, deliberating a criminal case in which entrapment was an issue.

Accordingly, we reverse and remand for a new trial.

LEVINE, MESCHKE and SANDSTROM, JJ., concur.

MESCHKE, Justice, concurring.

I join in the majority holding that what the presiding juror told the other jurors about this drug defendant's associations was extraneous prejudicial information that invalidated the verdict. I write separately, however, to express some reservations and to record my understanding of the narrow scope of this holding.

Most information that a juror brings into the jury room will be generalized knowledge, including personal knowledge about a party to the case. Ordinarily, NDREv 606(b) does not permit affidavits, evidence or testimony by a juror about the jury's discussions, even when some personal knowledge about a party was disclosed by one juror to the others. In nearly all counties in our state, it would be next to impossible to otherwise have a valid jury verdict, because most jurors know something about every other person in the county, their families, or their businesses.

Each juror's acquaintanceship with the parties or their backgrounds should be probed during selection of the jury. Then, if a juror lies about knowledge of a party but later reveals it in jury deliberations, juror affidavits would often be allowable to impeach the verdict. *See* 3 Weinstein's on Evidence ¶ 606[04], p. 606–41 and 42 (1994) (footnote omitted):

> Where the comments indicate that the juror had preconceived notions of liability or guilt or personal knowledge about the facts in issue, the statements may be admissible not because they are not prohibited by Rule 606(b), but as tending to prove that the juror lied on the voir dire, a separate question from that of impeachment of verdicts. See ¶ 606[02], *supra.* Even so,

cases in which this is alleged must be scrutinized carefully.

The record in this case does not include the jury selection process or show what this defendant did to guard against a juror's knowledge about him, or his business associations. No argument was made to us on this aspect, one way or the other. Ordinarily, though, if a party fails to adequately probe a prospective juror's acquaintanceships with the parties, their families, or their businesses, I believe that party should not be able to complain about any later jury discussion of it.

Here, the vice of this extraneousness invalidates the verdict. In a criminal case, a defendant should not be convicted on evidence of guilt by association. *See Zander v. S.J.K.,* 256 N.W.2d 713, 716 (N.D.1977) (reversing juvenile's delinquency adjudication for vandalism where he was "implicated in the acts of vandalism simply because he drove his companions to and away from the rest area, and because he was present [though not active] when it was vandalized."). The federal precedents discussed in the majority opinion seem to largely turn on this consideration. The guilt-by-association aspect of this extraneous information tips the scales for me, in an otherwise close and difficult case.

Ordinarily, general information that a juror is able to take into the jury room, even personal knowledge about parties to the case (unless it comes to him from an outside source during the trial), is neither extraneous or prejudicial. Instead, a juror's prior personal knowledge is usually a matter "concerning the juror's mental processes." Nevertheless, I join the majority opinion in this case.

VANDE WALLE, C.J., concurs.